WALKER *v.* LOUIS WERNER SAWMILL COMPAN.

Opinion delivered July 29, 1905.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—An employee who was injured in his master's employment cannot recover if the evidence fails to show any negligence of the master that proximately caused the injury, or if his own negligence directly contributed to his injury.

Appeal from Nevada Circuit Court.

JOEL D. CONWAY, Judge.

Affirmed.

### STATEMENT BY THE COURT.

On July 29th, 1902, plaintiff, Lee Walker, filed his amended and substituted complaint, in which he alleged that he was a minor, and sued by D. C. Walker, his next friend, and that, on the 22d day of November, 1901, he was in the employ of the defendant as a common workman, assisting in running one of its trains, which train was engaged principally in hauling logs to

the mill owned by the defendant at Sayre, Arkansas; that he had no experience in running trains or engines, which was well known to the defendant; that the engine upon and about which he was placed to work was not provided with an apparatus with which to sand the track, had no headlight, and was not provided with lanterns; that plaintiff was set to work, while said train was running, to sand the track, it being his duty to pour sand on the track with a can from a place upon the pilot of the engine; that the defendant failed to provide a safe place for him to sit, and that on the night the injury occurred, after dark, the train stopped, and plaintiff left his position on the pilot to assist in making a coupling and to procure sand; that the engine had no headlight, and plaintiff was not provided with a lantern; that there was no light about the engine except one lantern in the cab, and defendant kept no lookout, and could not have seen plaintiff if he had kept a lookout, on account of the failure of the defendant to provide lights; that, while plaintiff was in the discharge of his duty, the engineer, who was also a conductor and in charge of the train, negligently and without warning started the train; that the defendant had failed to provide a safe and sound roadbed, in that the ties were of uneven lengths, some six and some eight feet long, and that, in attempting to regain his position on account of having no light and the insecure place he was required to work and of the uneven ties, he stumbled over said uneven ties, and fell with his hand upon the track, and was so badly injured that amputation of his hand became necessary to save his life; that the defendant gave him no warning of the unsound and unsafe condition of the engine and track, and that by reason of youth and inexperience he was not aware of the danger to which he was exposed; that by reason of his injury his ability to earn a living had been greatly and permanently decreased; that he suffered great pain, to his damage in the sum of $5,000.

The answer denied the material allegations of the complaint, and pleaded contributory negligence.

Plaintiff testified as follows:

"I am twenty years old. The injury occurred November 22, 1901, between 8 and 9 o'clock at night, after dark. The train stopped to make a coupling over a hill and to get sand.

There was some trouble in making the coupling, and I went back to help. When I got to the back end of the engine Mr. Norwood, the brakeman, told me not to come in, as I had no lantern, and it was dangerous, and I was likely to get hurt. I started round to the front end, and before I got there, and when I was in about four feet of my place, the engine started.

"I had worked some time the first of the year on the railroad, and had worked on the train about a month when they laid me off for about a week; I had a lantern when I worked on the train the first time. They kept all lanterns at the commissary, and each man stood good for his own lantern. When I quit, I took my lantern back. The second time when I went to work, I applied to the bookkeeper for a lantern. He had charge of the affairs of the company at that point. I also spoke to Mr. Sparkman about it the morning I got hurt. I met him, and asked him if I could get a lantern, and he told me he did not know. I had been out a few trips without a lantern. Mr. Painter told me that he would have some in a few weeks, but that he had none at that time. We usually made two trips over the road each day. We seldom made three trips. The day I got hurt we were coming in on our second trip. We usually got in in the daytime, but sometimes would be after dark. They had a sand box on the engine, but did not use it. The sand was kept in a bucket sitting on the pilot between myself and the other brakeman. When the train stopped this night, I got off to get sand. Mr. Norwood went back to make the coupling. When he told me not to come in, I went to get on the front end of the engine, not expecting them to start before they gave the signal. The engineer was between Norwood and myself on the opposite side. They had three lanterns on the train, two of which were in the cab, to see about the steam and water. There were four men on the train. The engineer, fireman and Mr. Norwood each had a lantern. Each man when he got his lantern was charged with it, and if he returned it he was given credit for it. Tulley Norwood got the lantern which I turned in when I was laid off the first time. The headlight was not lighted the night I was injured, because there was no oil, and had not been lighted for four or five days, and during this time there was no oil in the headlight. Garland Nichols had charge of the train, and gave orders for running it. The train was loaded with logs. They were flat

cars, called skeleton cars, with no steps on them. The brakeman generally rode on the front end, coming in. The front end of the engine had an 8x10 piece to sit on and the board for our feet. Norwood sat on one end, and I on the other, and sat close to the rail with the bucket between us, and sanded the track with our hands. We got the sand off the side of the road. I got no sand that night, as there was plenty in the bucket. They gave no signal, but just opened the throttle and started, and when I was within four feet of my place, walking by the side of the engine, I fell down, and my left hand fell across the rail. It had rained that morning, and it was a dark night.

"My hand was so badly mashed that it was amputated, and I was laid up about a month. Before I got hurt I received $1.50 a day. Since that time night watching is about the only thing that I can do. I paid no doctor's bill, except that I contributed fifty cents a month out of my wages for a doctor. I suffer some yet, as I imagine that the fingers to my hand which has been cut off hurt me.

"When I was notified not to attempt to make the coupling, I started back to my place, and had gone about twenty feet, I reckon, when the engine started. I had not stopped, and was just going a common gait. Nichols, I think, made the coupling. I was walking towards the front of the engine, and expected the signal before the train started, but I did not stop. Mr. Norwood had his lantern in his hand. I did not see him when I got hurt. I think he had got on the engine, but whether in front or not I do not know. His lantern had been sitting there on this piece of timber. Something was said about lighting the headlight. I remember hearing the engineer say that night that he had no oil. He said this when we started over the hill the first time, and at the time we lighted the lantern. I had worked on this train the first time about three weeks, but I worked on the railroad with Mr. Owens the first of the year."

The circuit court directed a verdict for appellee.

*Geo. R. Haynie* and *McRae & Tompkins,* for appellant.

The court erred in giving a peremptory instruction for the defendant, because:

(1) There was evidence, tending to show negligence of the defendant, sufficient to go to the jury. 71 Ark. 447; 48 Ark.

333; 44 Ark. 530; 39 Ark. 17; 54 Ark. 289; 54 Ark. 303; 40 L. R. A. 781.

(2) The case is not one where the undisputed facts show that the plaintiff was guilty of contributory negligence, or that the proximate cause of the injury was a risk he had assumed. 31 Minn. 248; 82 N. Y. 370; 107 Ill. 44; 71 Ark. 445; 17 Mich. 99.

*Gaughan & Sifford,* for appellee.

There is no such negligence of appellee disclosed by the evidence as made a case proper to go to the jury. 54 L. R. A. 402; 95 Pa. St. 287, s. c. 40 Am. Rep. 649; 58 L. R. A. 404; 36 Ark. 371; 71 Ark. 447.

The negligence of defendant complained of was known to plaintiff; he therefore assumed the risk. 35 Ark. 602; 41 Ark. 382; 41 Ark. 542; 54 Ark. 389; 58 Ark. 125; 55 L. R. A. 910.

WOOD, J., (after stating the facts.) Conceding that the appellee was guilty of negligence, which we think the proof tends to show, still there is nothing to show that such negligence was the proximate cause of the injury, or concurred in producing it, and, if it did, then it is clear from appellant's testimony that his own negligence also contributed. While appellant testifies that the night was dark, and that the headlight was not burning, and that he had no lantern, and that no signal was given before starting, still it does not appear that, if the headlight had been burning, it would have lighted the place where appellant was walking when he was injured. Nor does appellant say that the failure to give the signal, or to furnish him a lantern, caused him to stumble and fall. He says, "When I was within four feet of my place, walking by the side of the engine, I fell down, and my left hand fell across the rail." He does not say that it was caused by the darkness or the starting of the engine without signal. We know that his injury was caused by his falling, but no one can say from the evidence what was the cause of his falling. The jury were not at liberty to find as a fact that the appellant fell because he could not see, or because the engine started without a signal. If such had been the fact, appellant might have stated it as a fact. If such was the fact, appellant knew it, better than any one else.

It was not shown that the place where appellant was walking was rough. For aught that the proof shows to the contrary, appellant's fall may have been the result of accidental misstep, not caused by any of the things charged as negligence in the company. It might just as well have been attributed to some inherent clumsiness or physical defect in appellant as to any other cause. The whole matter was left to conjecture, and in such case the inference from the undisputed evidence most favorable to appellee must be taken, for appellant has the burden.

Again, it appears that appellant did not get off to help make the coupling, but to get sand. He says: "When the train stopped this night, I got off to get sand." True, after he had got off "to get sand," finding that no sand was needed, he started to assist in making the coupling, but was told that he was not needed for that, and was warned to "keep out," as the place was dangerous. It appears that he did not discover that the bucket contained "plenty of sand" until he was off the engine. "I didn't get any sand; they had plenty to go over the hill," he says. Again, he says, "I got off, and saw there was enough sand in the bucket;" then he went around to see about the trouble in coupling. Now, it was shown that he sat on one end of a plank on the front of the engine, and another brakeman sat on the other, and there was a sand bucket between them from which they each sanded the track. The bucket was about "two or three feet" from appellant, and he could just as easily have discovered that it had "plenty of sand" before he got off as afterwards, yet he says he "got off to get sand," and "as quick as he got off he saw he had plenty of sand." "If he had noticed, he would have known" that there was "plenty of sand in the bucket." It conclusively appears that the carelessness of appellant himself in not discovering that there was plenty of sand in the bucket was the cause of his getting off; and if he had not left the engine to get sand, he would not have been injured, of course. He was guilty, by his own undisputed evidence, of contributory negligence.

The court did not err. Let the judgment be affirmed.