# LESTER ELMER v. MUTUAL STEAMSHIP COMPANY.[1]

May 5, 1911.

Nos. 16,967—(64).

**Custom — pleading and evidence.**

In negligence cases, where evidence of custom is admissible, it is not necessary to plead such custom.

**Assumption of risk.**

It conclusively appears from the evidence that plaintiff, a watchman on a steamboat, knew that the hatches were open at night, and assumed the risk of injury from falling into an open hatch.

**Evidence.**

It conclusively appears from the evidence that placing a ladder in the position it was at the time of the accident was the act of a fellow servant of plaintiff, and not a breach of any duty of the master.

Action in the district court for St. Louis county to recover $11,-016 for personal injuries. The facts are stated in the opinion. The answer was a general denial. The case was tried before Dibell, J., and a jury which returned a·verdict in favor of plaintiff for $1,600. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed and judgment ordered for defendant.

*Spencer & Marshall,* for appellant.

*John Jenswold, Jr.,* for respondent.

BUNN, J.

On Tuesday morning, June 22, 1909, the steamship F. G. Hartwell, owned by defendant, arrived at Superior, Wisconsin, with a cargo of soft coal, and was moored to a dock for the purpose of discharging her cargo. The Hartwell is 525 feet in length by 55 feet in width, and is provided with· 15 hatches in the deck for the recep-

[1]Reported in 130 N. W. 1104.

tion and discharge of cargo. Each of these hatches extends athwart ship, and is 50 feet long by 12 feet wide. They are numbered from 1 to 15, beginning at the forward end of the deck. There is a distance of 12 feet between each hatch and the one next to it. In front of No. 1 hatch is an iron railing about 4 feet high, extending across the ship the entire length of the hatch. A similar railing is immediately behind hatch No. 15. Each hatch was surrounded by a coaming of steel 12 inches high. Hatch covers of steel, ¼ inch thick, in sections of 12 feet by 6 feet, were provided. They were arranged on the coamings of the hatches, so that they would slide from the center to the sides, and were there piled on top of each other when the hatches were open. When so piled, they reached to a height of 2 or 2½ feet above the deck. There was a passageway between these piles of covers and the sides of the ship 2½ feet wide. Two wire cables running through standards 3 feet high extended the entire length of the ship on both sides, forming a railing to prevent falling over the side. At the forward end of the deck were the wheelhouse and crew's quarters. Aft were the kitchen and engine room. The ship was moored to the dock by cables, two aft and two forward. The coal was unloaded by hoisting apparatus and buckets called "clam shells." The clam shells, loaded with coal, would swing over the deck, and coal often fell on the deck between the hatches, so that pieces of all sizes covered the deck. There were no lights on the ship at night.

Plaintiff, who was not a seaman, but had been a watchman on other boats in the Duluth-Superior harbor for two months, on June 22 reported to the Hartwell as a special policeman or watchman, and was employed by defendant as a special or extra watchman to stand watch with the ship's regular watchman. His duties were to see that no intruders came upon the boat. He was on watch from twelve noon to six p. m., and from twelve midnight to six a. m. He immediately entered upon his duties, and continued to perform them up to the time of the accident on Saturday, June 26, at two a. m. The work of unloading did not begin until Wednesday. During Tuesday and Tuesday night the hatches were closed; but on Wednesday morning all the hatch covers were

slid back and piled up, and the work of discharging the cargo was begun. The hatch covers were left open from this time, both day and night. Friday night, at midnight, plaintiff was called from his sleeping room forward, and proceeded aft along the passageway on the side of the boat farthest from the dock to the kitchen, where he found the ship's watchman and had his lunch. He then seated himself in a chair on the deck near the kitchen, and remained there until two o'clock, when, as he testifies, he thought he heard a noise as of somebody trying to board the ship forward on the dock or port side. He went forward the same way he had come back, by the passageway on the starboard side, and testifies that, when he got to a point between hatches 5 and 6, he started across the deck in the space between those hatches, and that when nearly across he struck an obstruction on the deck, which he afterwards concluded was a ladder, and went over head first through the open hatch into the hold, falling some twenty feet and sustaining injuries.

This action was brought to recover damages for the injuries plaintiff so sustained. The complaint charged that the accident was caused by defendant's negligence in (1) leaving the hatches uncovered; (2) permitting the ladder which plaintiff claims to have struck to lie extended on the deck between the hatches; (3) failing to have lights on the boat. The case was tried to a jury. The court denied defendant's motion to direct a verdict, and submitted the case to the jury on the question of whether it was negligence for defendant to permit the hatches to be open at night, submitting also the questions of assumption of risk and contributory negligence. There was a verdict for plaintiff, and defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

1. The evidence tended to show that it was the custom in the Duluth-Superior harbor to cover hatches at night. This evidence was admitted over defendant's objection that the custom was not pleaded, and its admission is assigned as error. We think the objection was not well taken. Evidence of custom in negligence cases is admitted, not on the theory that a breach of custom is negligence per se, or observance of custom necessarily conclusive that there was

no negligence. It is admitted as evidence of negligence, or of due care, as the case may be, and it is no more necessary to plead it than any other purely evidentiary facts. The point that the custom was local, and not general, was not saved by any proper objection.

2. In view of this evidence of custom, it may be that it became a question for the jury as to whether it was negligence for defendant to fail to cover the hatches at night, after the day's work of discharging cargo was over. But we do not decide this, as we are satisfied that it appears conclusively from the evidence that plaintiff assumed the risk of injury by falling through an open hatch. 'He does not deny that he knew the hatches were open at the time he left the safe passageway to cross the boat between two hatches at the time of the accident. He says that he noticed one pile of hatch covers piled up as he turned from the passageway to cross the deck just before the accident, and that he did not look for or notice other piles. He had never seen the hatches closed while he was on the boat, after they were first opened. He admits that he knew they were open, at least some of them, all the time he was on the boat. He testifies directly to this knowledge, and the evidence indicates that he must have known. It was light at least for two hours before his morning watch ended, and he must have observed the open hatches then, and also after his afternoon watches ended, during the hours after six p. m. before he retired, and before it grew dark. We cannot avoid the conclusion that plaintiff knew, at the time he left the safe passageway to cross the deck, that there were open hatches on either side of him. It is conclusively shown. It follows that plaintiff knew the very danger that he complains of as constituting the negligence of defendant, and it must be held as a matter of law that he assumed the risk.

The only question of negligence submitted to the jury was as to whether or not it was negligence to fail to cover the hatches at night. The court did not refer to the question of the ladder, though that was a live issue. We must assume that the case was decided by the jury on the issues as submitted by the court. Our conclusion that plaintiff assumed the risk of the open hatches, therefore, leads to a new trial in any event, and to an order for judgment in favor

of defendant, unless we can see 'from the evidence, or from the facts as they might be shown at another trial, that there is an issue that could be submitted to a jury.

3. This brings us to the inquiry: Would it be a question for a jury to decide whether leaving the ladder in the position it was in at the time of the accident was negligence on the part of defendant? If we can say that there is or may be any question for a jury based on this feature, we should not order judgment, but send the case back for a new trial; but if it is clear, from the facts presented in the record before us, that no case is made for a jury, and that no case can be made on a new trial, it is our duty to end the litigation.

This ladder was used during the daytime and in the evenings, until the crew were all aboard, to get from the dock to the deck of the ship. It was about 20 feet long and 2 feet wide, and when in use one end rested on the dock and the other rested against and projected above the railing on the deck of the boat. The evidence indicates a custom for the watchman to haul up the ladder late each night and put it on the deck; but it does not show that there was any particular place where it was customarily put when not in use. On the night preceding the accident, the regular watchman hauled up the ladder over the side, and laid it with one end resting on the deck, between hatches 5 and 6. On the evidence as it stands, it is quite clear that placing the ladder in this position was the act of a fellow servant of plaintiff, and not a breach of the master's duty to use reasonable care to furnish his servants a reasonably safe place in which to work. We cannot hold that it was a duty of the master to see that the ladder was not placed on the deck after it was hauled in at night. It was necessary to leave it somewhere, and it seems conclusive that the selection of the place was a detail of the work of the servant who hauled it in.

It is clear that plaintiff knew there were no lights, and therefore assumed the risk of injury because of the darkness. In our opinion it appears conclusively that plaintiff is not entitled to recover damages for the injuries sustained in this accident.

Order reversed, and judgment for defendant ordered.