## Oktibbeha County Cotton Warehouse Co. *v.* J. C. Page & Co.*

(Division A.   May 14, 1928.   Suggestion of Error Overruled Aug. 7, 1928.)

[117 So. 834.   No. 27018.]

---

*Corpus Juris-Cyc. References: Warehousemen, 40Cyc, p. 430, n. 69; p. 478, n. 32; As to sufficiency of evidence of negligence of warehousemen in case of damage to or loss of goods by fire, see annotation in 16 A. L. R. 295; 27 R. C. L. 994; 4 R. C. L. Supp. 1789.

*Magruder, Walker & Magruder,* for appellant.

*Frank A. Critz* and *Will Ward,* for appellee.

Argued orally by *W. W. Magruder,* for appellant, and *Frank A. Critz* and *Will E. Ward,* for appellee.

McGowen, J. The appellees, J. C. Page & Co., filed their declaration in the circuit court of Oktibbeha county against the appellant, Oktibbeha County Cotton Warehouse Company, seeking to recover the value of fifty-three bales of cotton, appellees' property, destroyed by fire in the warehouse of the appellant on the morning of September 4, 1927. The fifty-three receipts issued by the warehouse company for the fifty-three bales of cotton to J. C. Page & Co. were attached to the declaration. The declaration sought to impose liability on the appellant warehouse company for the loss, by fire, of the fifty-three bales of cotton under and by virtue of chapter 199, Hemingway's 1927 Code (chapter 218, Laws of 1920), and to invoke the construction of said chapter as announced by this court in *Federal Compress & Warehouse Co. v. Coleman,* 143 Miss. 620, 109 So. 20.

The appellant, the warehouse company, filed a plea of the general issue, with notice that appellee's cotton was wholly destroyed by fire without negligence on its part, and that the appellant had used such care in regard to its warehouse and all cotton stored therein as a reasonably careful owner of similar goods would have exercised with regard to cotton of his own.

It is urged here by the appellant, as it was urged in the court below, that, because of the appellees' failure to

pay, or offer to pay, for the weighing charges due on their cotton at the time of the fire, the Warehouse Receipts Act cannot be invoked, but that this case is controlled by the announcement of this court in *Y. & M. V. R. Co.* v. *Hughes,* 94 Miss. 242, 47 So. 662, 22 L. R. A. (N. S.) 975. This question, among others, is argued earnestly and insistently *pro* and *con.*

In the court below, the appellant, the warehouse company, asked for, and was refused, a peremptory instruction, contending there, as well as here, that no negligence was shown on the part of the appellant in the handling of this cotton, and that the proof is uncontradicted that the cotton stored was handled by the appellant company with such care in regard to the goods stored as a reasonably careful owner of similar goods (cotton) would exercise.

Without so deciding, but assuming that said chapter 199, Hemingway's 1927 Code (chapter 218, Laws of 1920), was complied with by the appellees, and further assuming that the appellees had the right to base their action upon said chapter, and that, the property having admittedly been destroyed by fire the warehouse company, the appellant, must show the degree of care required by said act, we are of the opinion that the appellant met the burden imposed upon it by such act.

The facts of this case necessary to state are as follows: The Oktibbeha County Cotton Warehouse Company was operating, in the city of Starkville, a warehouse in which bales of cotton were stored. On September 4, 1927, about five o'clock in the morning, the warehouse was discovered to be on fire, and such warehouse with its contents—more than one thousand bales of cotton—was destroyed. In the evidence, it was shown that the warehouse's walls were constructed of brick, and that its roof was of metal; that its windows were protected by metal shutters, which remained closed; that there were ventilators, properly screened, in the roof; that the cotton

was stored in blocks, with aisleways between; that the warehouse had been operated for a long time; that the appellant had an employee who actively weighed the cotton and kept the warehouse generally; that such employee had been in its employ for many years, and was competent and faithful; that the building was kept clean and free from loose cotton, or debris; that there was neither telephone nor electric light connections in the building; that no oil was used therein, nor flash-lights; that there was adequate connection with the city's water-mains; that water barrels filled, with two buckets to each barrel, were placed at convenient points throughout the building—in fact, no detail of protection to make the building safe from fire seems to have been omitted by the appellant, save, as insisted by the counsel for appellees, that, notwithstanding all this precaution, there was no human hand to turn the hydrant on or release the water upon fire consuming the warehouse and the property therein stored.

The main point of attack as tending to show appellant's failure to exercise such care in regard to the cotton stored within the warehouse as a reasonably careful owner of similar goods would exercise is the fact that there was no watchman on guard at night, and that the appellant depended upon the police officials of the city of Starkville for such protection.

It was shown by Joe Yeates, a colored cotton weigher, who looked after the appellant's warehouse and issued receipts, etc., for the cotton, that he smelled "something like cotton burning," about noon, on the 3rd day of September, about seventeen or eighteen hours before the appellant's warehouse was discovered burning. He said that he thought he smelled cotton burning, and that he immediately looked throughout the warehouse, and found no evidence of fire therein, but saw smoke coming from near a printing office some distance away; that he was satisfied in his own mind that the burning of debris at or

near this printing office was the source of the odor; that he made no report of it, because on his search of the warehouse he found no trace or evidence of fire; and that in the evening, at closing time, he went through the warehouse again, but found no trace of, or smell of, burning cotton or fire. It was shown by several white men that Joe Yeates, in telling about the circumstance of smelling cotton burning, on the day after the fire, gave as a reason for not reporting the circumstance that he forgot it; that he became busy, and overlooked mentioning anything about this occurrence, and did not tell his superiors that he immediately inspected the building.

Another circumstance urged is that it was testified that some cotton caught fire, some two days prior to the fire, in a public gin not connected with this warehouse, as it was being ginned, and that this bale of cotton was stored thereafter in the warehouse, but it is not shown that the appellant company, nor any agent thereof, knew of this controverted circumstance. Much testimony was taken in regard to what occurred at the gin. Certain it is that the gin was stopped, and that immediate search was made throughout the gin plant. No trace of fire was found, according to the employees and agents of the gin company, but witnesses testified that they saw pieces of cotton on fire. One witness testified that he put a piece of cotton, which was taken from the gin press, in a bucket of water, and that an employee was sent through the flue which blows the lint cotton from the gin on to the conveyor, and from there toward the press, to investigate for fire. The manager of the gin stated that there was only a small amount of cotton in the press, and that he made an examination of it. The proof shows that loose cotton burns rapidly whereas bale cotton burns very slowly.

There are no circumstances tending to explain to us how the fire originated. The sheriff of the county and other witnesses were going along the street in close proximity to the warehouse, to and fro, ministering aid to the

sick and dying within an hour or two hours before the discovery that the warehouse was on fire. They saw no signs of fire, nor heard any sound. None of their senses were warned of any danger to the warehouse. The sheriff of the county passed along the street in close proximity at least twice within a very short time before the fire, demonstrating that a man on the outside of the building would not be able to detect evidence of fire within, if the fire originated from the burning cotton on the inside. As to how the fire originated is the wildest speculation. So far as the cold, printed pages of this record disclose, the origin of the fire is an unsolved mystery, as are many catastrophes resulting from fires about which we read.

Without following counsel in the trial of collateral issues, these are the salient facts: The position of counsel for appellees seems to be: (1) That a reasonably prudent man in dealing with his own cotton would have maintained a night watchman; (2) that the cotton weigher, the man on duty at the warehouse during the daytime, just about noon on the day before the fire, while at the warehouse, smelled an odor which he thought to be burning cotton, and gave no alarm; and (3) that the fact of the fire itself demonstrates some lack of care on the part of the appellant which would have been exercised by a reasonably prudent man.

Taking the case in the strongest possible view against the appellant, the warehouse, we do not think that the evidence of the weigher that he thought he smelled burning cotton some seventeen or eighteen hours before the fire, or the fact of the fire, together with the fact that no night watchman was employed, constitutes any degree of negligence on the part of the warehouse company. Let it be remembered that we are pretermitting a decision of whether or not the appellee, J. C. Page and Co., complied with, or were entitled to invoke, the Warehouse Receipts Act; but we have applied to this case section 9557, Hem-

ingway's 1927 Code (section 21 of Chapter 218, Laws of 1920), which is as follows:

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

We do not think the warehouse company in this case has failed to exercise that care of the cotton stored in its warehouse which the owner of the cotton would have exercised had it been in his possession. Would J. C. Page & Co. have employed a night watchman to watch fifty-three bales of cotton, while owning same, during the still hours of the night, at a time when the cotton was securely located in a building composed of brick walls, with a fire-proof or metal roof, and no place of entrance, save at the doors, which were securely shut and locked, protecting that within from outside or extraneous things, and nothing to arouse any suspicion at the time of the close of the day's business that anything unusual was about to happen? In a city the size of Starkville, would a man think it strange if he smelled the odor of burning cotton from burning trash piles and debris, such as the burning of cheese cloth—cotton goods—along the side of the street, and then, upon making a diligent and careful inspection of the cotton in his charge, and no sign of fire being seen, nor odor of smoke detected, that, because a person thought he smelled smoke or burning cotton, should he believe on that particular fact the entire warehouse and its contents, more than one thousand bales of cotton, would be destroyed? Common human experience teaches us that negligence may not be based on trifles, but must be based upon those things which should arouse the attention of a reasonably prudent person in the care of his own goods; and we have reference to the character and

degree of negligence described in the Warehouse Receipts Act.

We think the evidence taken in its entirety absolves the appellant from liability for the loss of the cotton here involved.

Reversed, and judgment here for the appellant.

*Reversed.*