JONESBORO COMPRESS COMPANY *v.* HALL.

Opinion delivered January 7, 1929.

*Block & Kirsch, E. P. Mathes, Aline Murray* and *N. F. Lamb,* for appellant.

*Frank Pace, Gordon Frierson* and *Caraway, Baker & Gautney,* for appellee.

SMITH, J. Separate complaints were filed by W. A. Hall and fifty-five other persons against the Jonesboro Compress Company to recover the value of certain cotton stored by the plaintiffs in the warehouse of defendant, in the city of Jonesboro. These cases were consolidated and tried together. A stipulation covered the value of the cotton, and that question was not submitted to the jury. There was a verdict in favor of all the plaintiffs, and judgment accordingly, from which is this appeal.

The cotton was destroyed by a fire which was discovered about noon December 8, 1927, and the complaints filed by the owners of the cotton alleged numerous acts of negligence as the cause of the fire. After much testimony had been offered to sustain the various allegations of negligence, the court held that the only ground of alleged negligence upon which there was enough testimony to go to the jury was that of the failure by the compress company to keep a watchman on the premises during the noon hour, and the jury was told to find for the defendant if this ground of negligence was not established by the testimony.

At the time of the fire, cotton of the value of $500,000 was stored in the compress. The service rendered by the compress company was that of compressing the cot-

ton and storing it, subject to sale. The compress was divided into four sections, in each of which cotton was stored, and the cotton here in question was stored in section A, there being, at the time of the fire, 2,980 bales of cotton in this section; however, only 319 bales of the cotton is involved in this litigation. Although all the cotton stored in section A was destroyed, the fire department, while unable to extinguish the fire, was able to confine the fire to the section in which it originated.

The testimony on the part of the plaintiffs was to the effect that the switch tracks of the Cotton Belt Railroad ran on one side of the compress and those of the Frisco Railroad on the other, and that switch engines ran all day. Particles of loose cotton were lying on the floor of the section of the compress where the fire originated, and the day was dry and windy, and at least one door was left open, this being a door 16 feet wide. Adjacent to this section A was the engine room, where a coal fire was burning under the boilers, but there was no opening from the boiler room to the compress.

The testimony is conflicting as to where the fire originated, that on the part of the plaintiffs being to the effect that the fire was first discovered on the floor of the compress, along which it ran until some bales of cotton were reached and ignited. The testimony on the part of the defendant compress company was to the effect that the fire was first discovered on top of a bale of cotton, and from there it was soon communicated to other bales, and that the fire spread with such rapidity as to amount almost to an explosion.

Testimony was offered by the defendant to the effect that it was not customary to employ watchmen about compresses, except at night and on Sundays and holidays, when the compress was not in operation; that at all times when the compress was in operation no special watchmen were employed, as every employee was a watchman. Negro laborers had been at work in section A until the noon hour, but none of them were present in this section when the fire was discovered. They were

in a small office inside of section A, eating their lunch, when the fire started.

It is earnestly insisted that no case was made for the jury, and that a verdict should have been directed in defendant's favor. It is insisted that there was no testimony as to any negligence on the part of the defendant, except the failure to keep a watchman on duty, and that the undisputed testimony shows that it is not customary to employ watchmen at compresses during the noon hour on days when they are being operated. As presenting this theory of the case, defendant requested instruction numbered 10, reading as follows: "* * * If you find from a preponderance of the evidence that, throughout the States in which compresses are operated, it is not the practice or custom to have such watchmen during the noon hour or on days when the plant is being run, then the defendant was not guilty of negligence in not having a watchman during the noon hour on the day of the fire."

The defendant offered the testimony of several witnesses to the effect that it was not customary to keep watchmen at compresses during the noon hour when they were being operated. Such testimony is admitted, not for the purpose of permitting persons engaged in the kind of business out of which the damage arose to artificially, and without the supervision of the courts, determine what does or does not constitute negligence, but is admitted as bearing upon the degree of care which an ordinarily prudent person would use under the circumstances of a particular case. If one whose conduct was called into account as having caused an injury was shown not to have used the care which an ordinarily prudent person would and should have used under the existing circumstances, then he is negligent, although it may be shown that others were equally as negligent.

In the case of *Elmer* v. *Mutual S. S. Co.*, 114 Minn. 257, 130 N. W. 1104, evidence was offered as to the custom of keeping hatches closed in the Duluth Harbor at night,

and, in holding the testimony competent, the Supreme Court of Minnesota said:

"This evidence was admitted over defendant's objection that the custom was not pleaded, and its admission is assigned as error. We think the objection was not well taken. Evidence of custom in negligence cases is admitted, not on the theory that a breach of custom is negligence *per se,* or observance of custom necessarily conclusive that there was no negligence. It is admitted as evidence of negligence, or of due care, as the case may be, and it is no more necessary to plead it than any other purely evidentiary facts."

To render the testimony as to a custom admissible as tending to show the care that an ordinarily prudent person would use, there should be a preliminary showing of substantially identical conditions. As a practical matter, the value of such testimony would depend upon the identity of conditions. However, as we have said, these are jury questions, unless the testimony is such that only one conclusion may be reasonably or fairly deduced from the circumstances of the particular case.

The court charged the jury that: "If you find from the evidence that defendant took such care of plaintiff's cotton as an ordinarily prudent person would have taken for the purpose of guarding it against fire, then your verdict will be for the defendant."

After a careful consideration of the testimony, we are unwilling to say, as a matter of law, that the failure of the defendant to keep a watchman at the compress during the noon hour was not negligence, although this was not the custom of other compresses. The jury may have concluded that the fire hazard required the presence of a watchman at the Jonesboro compress. In addition to the testimony stated, it was shown by the undisputed testimony that, excepting only the explosives, cotton is one of the most inflammable substances, and that a fire in cotton spreads with great rapidity. The testimony also shows that, during the noon hour, at least two persons unloaded cotton into section A of the com-

press, and that no employee of the compress was present at the time. The compress was open to any one who wished to enter, and there were doors on both the north and south sides of the building. No employee of defendant was in charge of the compress at the noon hour.

There was some conflict in the testimony as to the length of time which elapsed after the discovery of the fire before it got out of control, and appellant insists that the absence of a watchman was not the proximate cause of the damage, for the reason that the fire could not have been extinguished had a watchman been present, and it is insisted that it is mere surmise and conjecture for the jury to have found otherwise. We do not think so. The care employed should have been commensurate to the attending danger. A watchman employed for the purpose would have known the portions of the compress which were open and exposed to danger, and might have directed his attention to the sections where there was reason to apprehend danger, and he might have discovered the presence of the fire earlier than those who did discover it, and who were under no duty to look for fires. He might have also employed the agencies at hand to extinguish the fire in its incipiency with which others were not familiar, and he might also have given the fire alarm sooner than was done. The persons who discovered the fire attempted to call the fire department over the telephone, but the office of the compress company, where the telephone was located, was locked, and they were unable to enter and use the company telephone until the door of the principal office had been forced open.

Under these circumstances we do not think it must be said, as a matter of law, that the failure to keep a watchman was not the proximate cause of the fire loss.

The compress company was not an insurer of the cotton. On the contrary, the receipts given for cotton delivered at the compress recited that: "Said cotton is not insured by the undersigned warehouseman against loss or damage by fire or lightning." The liability of the compress company was that of a warehouseman, and

it was liable for the loss of the cotton by fire in the event only that its negligence was the proximate cause thereof. Section 10365, C. & M. Digest; *Gulf Compress Co.* v. *Harrington*, 90 Ark. 260, 119 S. W. 249, 23 L. R. A. (N. S.), 1205.

The court refused to give, at appellant's request, an instruction numbered 12, reading as follows: "If you find from the evidence that the origin of the fire is unknown, then in that event it will be impossible for you to trace the fire to any act of negligence on the part of the defendant, and your verdict will be for the defendant."

It is pointed out that the giving of an instruction substantially to the same effect was approved by this court in the case of *Clark* v. *St. Louis, I. M. & So. Ry. Co.*, 132 Ark. 257, 201 S. W. 111. That was a case in which a railroad company was charged with kindling a fire on its right-of-way, which spread and consumed the plaintiff's property, or, if not so caused, that the fire was kindled from sparks from one of defendant's trains. There was a question of fact in that case whether the fire had originated in either of the ways alleged. The question there was that of liability for kindling or starting the fire. That is not the negligence upon which the plaintiff's cause of action is predicated in the instant case. The negligence here complained of is the failure to have a watchman to discover the presence of the fire, however caused, and that, regardless of the origin of the fire, its occurrence and the danger of spreading should reasonably have been anticipated and provided against by the presence of a watchman. There was therefore no error in refusing instruction numbered 12.

Appellant company cites and relies upon the case of *Oktibbeha County Cotton Warehouse Co.* v. *Page & Co.*, 117 So. 834, in which the Supreme Court of Mississippi held as a matter of law that the failure of the compress company to maintain a night watchman was not negligence. We think, however, that the instant case is distinguished from that case on the facts, in that there were

fire hazards in the instant case which were not present in the Mississippi case, which made the question one of fact whether a watchman should have been employed. The case of *Gulf Compress Co.* v. *Harrington, supra,* is more nearly in point.

The real and difficult question in the case is whether the testimony is legally sufficient to support the verdict, and, as we have concluded that it is, the judgment must be affirmed, and it is so ordered.