**O. B. CRITTENDEN & CO. v. NORTH BRITISH & MERCANTILE INS. CO. OF LONDON, ENGLAND.**

Circuit Court of Appeals, Fifth Circuit. March 20, 1929.

No. 5490.

Ernest Kellner, Jr., of Greenville, Miss., for appellant.

Wm. H. Watkins, of Jackson, Miss., and R. L. McLaurin, of Vicksburg, Miss. (C. M. Smithdeal, of Dallas, Tex., and Watkins, Watkins & Eager, of Jackson, Miss., on the brief), for appellee.

Before WALKER and FOSTER, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. This suit was brought in the court below on April 30, 1927, by the appellee, an insurance company, against the Greenville Compress Company and any and all persons having or claiming any interest in approximately 28,000 bales of cotton referred to in the bill or in outstanding negotiable warehouse receipts issued for that cotton. The bill contained allegations to the following effect:

The Greenville Compress Company operates at Greenville, Miss., a bonded warehouse under the United States Warehouse Act (7 USCA § 241 et seq.), and in the conduct of that business had stored with it approximately 28,000 bales of cotton, when, in April, 1927, in consequence of a break in the Mississippi levee a few miles north of Greenville, the waters of the Mississippi river inundated the city of Greenville and the warehouses in which that cotton was stored. Approximately 20,000 of the 28,000 bales of cotton were covered by a policy issued by appellee to the Staple Cotton Co-Operative Association, insuring against loss or damage from fire, water, or flood, the remainder of that cotton belonging to sundry other persons and corporations to appellee unknown. All of that cotton, as a result of the inundation, is entirely wet and saturated with water, and has been and is greatly damaged, as to much of it all means of identification have completely disappeared, and it is now and in the future ever will be utterly impossible to identify thousands of the bales of cotton insured by appellee, and to separate the insured cotton from the uninsured, or that insured by other insurers. Appellee admits liability, and offers to perform the obligations of its policy, under the terms of which appellee, upon admitting its liability, immediately became entitled to all cotton insured by it which was damaged by the flood, and to salvage that cotton in order to reduce appellee's loss.

Shortly after the filing of the bill, and pursuant to its prayer, the court appointed a receiver to take possession of the above-mentioned cotton, and ordered that notice by publication once a week for six successive weeks in a named newspaper in the city of Vicksburg be given to all persons having or claiming any interest in the cotton, or negotiable warehouse receipts therefor issued and outstanding, commanding such persons to appear at the next term of the court to plead to the bill of complaint. After the sale of all of the cotton by the receiver pursuant to an order of the court, and after it had come to the knowledge of the receiver that appellant was the owner of some of the uninsured cotton in the warehouses, the court ordered that process in the cause be served on appellant, that he be enjoined from bringing any action at law by reason of the warehouse receipts held by him, and that he be required to intervene in the cause and propound his claim therein.

Appellant, by a pleading filed in the cause, asserted title to 756 bales of the cotton taken possession of by the receiver under the court's order, and for which appellant held warehouse receipts, attacked the validity of the action of the court in appointing the receiver without notice to appellant, and of the action of the receiver in taking possession of appellant's cotton, alleged appellant's demand of the delivery to him of his cotton, accompanied by a tender and offer of surrender of the warehouse receipts therefor, and the noncompliance with that demand by the receiver, and prayed that the bill of complaint be dismissed in so far as appellant and his property are concerned, that the order appointing the receiver be revoked and set aside in so far as appellant and his property are concerned, that the sale of appellant's cotton by the receiver be set aside, and "that said receiver be required to immediately surrender to this defendant or to said Greenville Compress Company the 756 bales of cotton for which this defendant holds the warehouse receipts of said compress company, or, if this be impossible on account of the sale thereof by said receiver, that this honorable court require said receiver to pay to this defendant, out of that part of the proceeds of the sale of said 28,000 bales of cotton distributable to plaintiff, the full value of said defendant's 756 bales of cotton."

There was evidence to the following effect: The cotton taken possession of by the receiver was in two warehouses, one called plant No. 1, and the other called plant No. 2. All the cotton in plant No. 1 was damaged. The cotton in plant No. 2 was not so much damaged. Appellant held warehouse receipts for 614 bales of cotton in plant No. 1, for 128 bales in plant No. 2, and for 14 bales the receipts for which did not indicate

in which warehouse they were stored. The cotton sold by the receiver was in such condition, due to the flooding, that the price at which the receiver sold it, $19.05 per bale, was fair and reasonable. The sound value of appellant's cotton prior to the flooding was $80 per bale on the average, and the sound value of such cotton advanced after the flooding. There was no evidence as to the value of appellant's cotton after it was damaged, except a statement of the appellant that "he tried to sell his cotton, and received an offer of $25 per bale net for it," and the statement of another witness that appellant received an offer from a named firm of $25 per bale net for his cotton.

As to appellant's claim the court decreed: "That the said O. B. Crittendon, doing business under firm name and style of O. B. Crittendon & Co., having a claim for 756 bales of cotton, of the sound value between April 21 and April 23, 1927, of $63,510.10, be and is hereby allowed against the funds in the hands of the receiver in the above entitled cause, and that the said O. B. Crittendon & Co. be and is hereby allowed, and the said C. B. Snow, receiver, be and is hereby directed to pay to the said O. B. Crittendon & Co., a dividend of fifteen (15%) per cent. thereupon, being the same dividend heretofore paid to other claimants against said fund, and that the said O. B. Crittendon & Co. receive such other and further dividends as are payable to the other claimants to said fund in this cause."

Though as to appellant the action of the court in appointing a receiver, and the action of the receiver in taking possession of and selling appellant's cotton, and in not complying with appellant's demand for the delivery of his cotton upon the surrender of the warehouse receipts therefor, were invalid or wrongful, the liability of the appellee or the receiver to appellant was not for more than the value of that cotton as it was after being damaged by the flood. Though the appellee and the receiver be regarded as standing in the shoes of the warehouseman, and without right to withhold appellant's cotton, neither was liable for damage caused by the flood disaster; the evidence not showing that that damage or injury could have been avoided by the exercise of such care as a reasonably careful owner would exercise. Hemingway's Annotated Mississippi Code 1927, § 9557; Oktibbeha County Cotton Co. v. Page & Co. (Miss.) 117 So. 834; 27 R. C. L. 987.

The evidence contained in the record does not negative the conclusion that the amount awarded to appellant equals or exceeds the value of his cotton in the condition in which it was left by the disaster to which it was subjected. The statements as to an offer to appellant of $25 per bale for his cotton were unaccompanied by any evidence that that offer was made by one who was ready or able to comply with it, or was made after all the damage due to the flooding was inflicted. That evidence is lacking in probative value. It is not contended for appellant that the value of his cotton in its damaged condition was established by evidence. The evidence as to the value of that cotton, which was relied on, had reference to its value in the condition in which it was before the flood disaster occurred; the contention in behalf of appellant being that he was entitled to recover the amount of the value of his cotton in sound condition.

That contention is not sustainable, as an effect of sustaining it would be to charge a warehouseman or one standing in his shoes with liability for damage or injury caused by the flood disaster and not contributed to by the negligence or fault of any one having any relation to the cotton. Assuming, without deciding, that appellant was entitled to recover the value of his cotton, the burden was on him to prove that value. We conclude that the record fails to show that appellant sustained recoverable damages in an amount greater than the amount awarded to him by the decree appealed from. The record not showing that appellant was prejudiced by that decree, it is not subject to be reversed at his instance.

That decree is affirmed.