WALDO COTTON WAREHOUSE COMPANY *v.* LEWIS.

4-5988 141 S. W. 2d 28

Opinion delivered June 3, 1940.

*S. E. Gilliam* and *McKay, McKay & Anderson,* for appellant.

*Ezra Garner, H. M. Barnes, W. K. Lemley* and *Steve Carrigan,* for appellees.

HOLT, J. Four separate suits were filed by appellee, J. L. Lewis, and approximately 200 other persons against the Waldo Cotton Warehouse Company to recover the value of certain cotton stored by them in appellant's warehouse in the town of Waldo, Arkansas, and which was destroyed by fire. These four suits by agreement were consolidated for trial.

It was further agreed that in case liability should be established against appellant, judgment should be rendered for each plaintiff for the amount of cotton lost as shown by receipts issued by appellant at a price of 8½ cents per pound. No question is raised as to the number of bales destroyed.

Upon a trial to a jury a verdict was returned in favor of plaintiffs (appellees here), and there was judgment accordingly, from which comes this appeal.

The record reflects that appellant, a domestic corporation, in 1924 built a cotton warehouse in the town of Waldo, Arkansas, in which it received and stored cotton for hire and profit. This warehouse was located about four blocks from the business section in a sparsely settled district in the colored part of town. It was a building covering nearly a block of ground, consisting of a wooden frame with walls and roof of sheet iron, and wooden floors. The sheet metal roof came up to its pitch from each of the four sides, and was constructed with the middle section of the roof about one hundred feet square raised and coming up from a space of about four feet above the roofs of the four sides. This open space between the roofs, and the roof over the center, furnished light and ventilation in the building and was protected all around by a wire screen. There were four fire plugs on the outside, one at each of the respective corners of the building. There were six inside fire hydrants, equipped with connecting hose, placed at measured intervals. Water barrels, with buckets were advantageously placed throughout the building and there was a well inside the structure. There was a telephone in the building that calls might be made to the outside in case of an emergency. Waldo had a fire department.

A night watchman was employed to watch and guard the stored cotton against fires during the active cotton season. The plaintiffs, approximately 200 in number, had each stored from one to ten bales of cotton in the warehouse, for which they paid a storage charge to appellant. Appellees knew that it was appellant's custom to keep a night watchman at the warehouse to guard against fire. The warehouse burned at about two o'clock a. m. October 18, 1938, and the cotton belonging to appellees was destroyed. Bales of cotton are highly inflammable and it was the custom to have a watchman over them day and night to prevent fires.

There is evidence that fire sometimes gets into the inside of a bale before delivery to the warehouse and may smoulder undetected for many hours before it burns to the point of detection. Bales of cotton were being received and stored in this warehouse up to and through the day before the cotton burned the night following.

Mr. Jim Wilson worked as night watchman at the warehouse until Saturday evening before the fire on the following Tuesday morning. He was discharged by Mr. Heath, superintendent. No other watchman took his place, and there was no watchman in charge at the time of the fire. Jim Wilson, who had been watching at the warehouse and who was familiar with the equipment, testified that had he been present, he could have easily put out the fire.

The evidence is to the effect that if a watchman had been on duty the fire could have been extinguished before spreading and burning appellees' cotton in question.

Frank Bollier, on behalf of appellees, testified that he first discovered the fire when he was about a quarter of a mile away from the warehouse. At that time it looked like an electric light in the building. He then walked from the planer one hundred yards to the sawmill, and called a negro and they looked at the fire from the sawmill. It had then turned a "shell" color, but had not grown much larger. They then waked up Schultz, the night foreman at the mill, and he came up and looked at the fire, and by that time it had spread to a considerable circle. These witnesses further testified that the fire was in the cotton about the middle of the warehouse, and it was in plain view.

Frank Bollier testified that from his experience as a watchman, and with the equipment on hand in the warehouse barrels, buckets, hose, and well, he could have easily put out the fire, even after he had come a hundred yards from the planer and he and the negro had looked at it from the sawmill.

There was other testimony on behalf of appellees of a corroborative nature.

Appellees base their claims of liability against appellant solely on the ground that appellant was negligent in failing to keep a night watchman on guard in the warehouse on the night the cotton in question and warehouse burned, and as stated by appellant "The only question, therefore, is whether the lower court erred in refusing to direct a verdict for Waldo Cotton Warehouse Company, as requested by its instruction No. 1".

In the instant case appellant warehouse company was not an insurer of the cotton in question. Its liability was that of warehouseman and it was liable for the loss of the cotton in question by fire in the event only that its negligence was the proximate cause thereof.

Section 14433 of Pope's Digest provides: "A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

In testing the sufficiency of the jury's verdict on the question of appellant's negligence in failing to provide a night watchman on guard over the cotton, we must view the testimony in the light most favorable to appellees and in favor of the jury's verdict. When this is done, on this record before us, we do not think it must be said, as a matter of law, that the failure to keep a night watchman on guard was not the proximate cause of the fire loss. In fact, we think the evidence ample to support the jury's verdict that this failure to keep a watchman was the proximate cause of the loss.

In *Jonesboro Compress Co.* v. *Hall,* 178 Ark. 753, 13 S. W. 2d 298, the facts are to the same effect as those presented here, and, we think, the principles of law announced there, control here. There this court said:

"After a careful consideration of the testimony, we are unwilling to say, as a matter of law, that the failure of the defendant to keep a watchman at the compress

during the noon hour was not negligence, although this was not the custom of other compresses. The jury may have concluded that the fire hazard required the presence of a watchman at the Jonesboro compress. In addition to the testimony stated, it was shown by the undisputed testimony that, excepting only the explosives, cotton is one of the most inflammable substances, and that a fire in cotton spreads with great rapidity.

"The testimony also shows that, during the noon hour, at least two persons unloaded cotton into section A of the compress, and that no employee of the compress was present at the time. The compress was open to any one who wished to enter, and there were doors on both the north and south sides of the building. No employee of defendant was in charge of the compress at the noon hour.

"There was some conflict in the testimony as to the length of time which elapsed after the discovery of the fire before it got out of control, and appellant insists that the absence of a watchman was not the proximate cause of the damage, for the reason that the fire could not have been extinguished had a watchman been present, and it is insisted that it is mere surmise and conjecture for the jury to have found otherwise. We do not think so.

"The care employed should have been commensurate to the attending danger. A watchman employed for the purpose would have known the portions of the compress which were open and exposed to danger, and might have directed his attention to the sections where there was reason to apprehend danger, and he might have discovered the presence of the fire earlier than those who did discover it, and who were under no duty to look for fires. He might have also employed the agencies at hand to extinguish the fire in its incipiency with which others were not familiar, and he might also have given the fire alarm sooner than was done".

Appellant relies strongly on the case of *Oktibbeha County Cotton Warehouse Co.* v. *J. C. Page & Co.*, 151 Miss. 295, 117 So. 834, and insists that the facts in the

instant case bring it within the rule laid down by the Supreme Court of Mississippi which held the warehouse company not guilty of negligence in failing to maintain a night watchman.

This court, however, in the Hall case, *supra*, distinguished that case from the Mississippi case and said: "We think, however, that the instant case is distinguished from that case on the facts, in that there were fire hazards in the instant case which were not present in the Mississippi case, which made the question one of fact whether a watchman should have been employed". Likewise, we think the Mississippi case, on the facts, is clearly distinguishable from the instant case.

On this record we conclude, therefore, that the evidence is amply sufficient to support the verdict and accordingly the verdict is affirmed.