ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* OWENS.

Opinion delivered March 25, 1912.

1. APPEAL AND ERROR—CONCLUSIVENESS OF JURY'S FINDING.—While the rule that the jury can not be permitted to indulge in mere conjecture is not to be ignored, yet where the circumstances are such that different minds may reasonably draw different conclusions therefrom, it is the duty of the appellate court not to disturb the finding of the jury. (Page 62.)

2. MASTER AND SERVANT—ASSUMED RISK—QUESTION FOR JURY.—The question whether a brakeman, knowing of the proximity of an embankment to the railroad track, assumed the risk of danger therefrom to him when he was, in discharge of his duties, riding on the side of a box car is a question for the jury. (Page 66.)

3. SAME—CONTRIBUTORY NEGLIGENCE—WHEN QUESTION FOR JURY.—The question whether a brakeman, who was killed while riding on the side of a box car, was guilty of contributory negligence was for the jury. (Page 66.)

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; affirmed.

*W. E. Hemingway, Lovick P. Miles* and *Thos. B. Pryor,* for appellant.

1. Between master and servant a *prima facie* case of negligence is not made by proof of injury. 100 Ark. 467; 79 Ark. 81. In the absence of a statute, there is no presumption of negligence. 44 Ark. 527; 46 *Id.* 555; 51 *Id.* 467; 179 U. S. 658. The doctrine of *res ipsa loquitur* does not apply.

2. There is no proof as to how the accident happened. Verdicts can not be found on conjecture. There must be proof. 67 C. C. A. 421; 132 Fed. 593; 139 *Id.* 737; 152 *Id.* 419; 98 C. C. A. 281; 101 Wis. 371; 115 S. W. 890; 133 N. Y. 659; 179 U. S. 658; 49 S. E. 508.

3. Deceased assumed the risk. 77 Ark. 376; 56 *Id.* 206; 170 U. S. 665; 191 *Id.* 64; 196 *Id.* 57; 91 Me. 268; 165 Mass. 71.

4. Instruction No. 1 was error.

*J. H. Harrod,* for appellee.

McCulloch, C. J. Plaintiff's intestate, Mack Apple, while working for defendant as brakeman on a freight train, was run over by his train and killed, and this action is for the benefit of the widow and children to recover damages sustained by them on account of the death of said intestate. Apple was brakeman on a northbound freight train, and was killed about noon on October 11, 1910, between the stations of Cabot and Austin, which are about three miles apart.

Negligence of the defendant is charged in raising an embankment of dirt so near the track that deceased, while performing his duty on a passing train, came in contact with the embankment and was dragged from the train and run over and killed. The defendant denied the charge of negli-- gence, and pleaded contributory negligence and assumption of risk on the part of said decedent.

The case was tried before a jury, and the trial resulted in a verdict and judgment in favor of the plaintiff, assessing damages in the sum of $3,000.

The principal contention is that the evidence was not sufficient to sustain the verdict, and it is earnestly insisted that for this reason the judgment should be reversed, and the cause dismissed. No one saw Apple killed, and the manner in which he came to fall under the train is established only by circumstantial evidence. Along the track, at the place where plaintiff's intestate was killed, defendant, in preparation to double-track the road, had hauled dirt and dumped it along the main track, raising an embankment to a considerable height, which began at the rail and sloped upward from the track. It consisted of soft fresh clay, and contained large lumps or clods. The last time Apple was noticed by any person was when the train passed Cabot. The engineer then saw him standing on the top of the tenth or eleventh car back from the engine. He was the head brakeman, and it was his duty, when the train approached a station, to go forward

to the engine, to cut off the engine and do the switching. In addition to this, it was his duty, as of the other brakeman, to watch his train while in motion to see that there was nothing down or out of place and to watch for hot boxes. Shortly before reaching Cabot a hot box had been discovered in the trucks of the eighth car from the engine. Apple was not seen to fall from the train, and was not missed until the train stopped at Austin, when, his absence being discovered, a search was made, and a portion of his body was found along the track, and an impression in the embankment showed where his side or hip had struck into the soft earth, making an impression several inches deep. His hat band, with his badge as brakeman, was found near this impression, and thirty or forty feet north of the impression in the embankment was found the first evidence of his being run over. Blood and hair were found on the rails at that point, and thence along the track, toward the north, parts of his body were found, one of his ears being found about half a mile north of there. An examination of the train was made, and the first blood was found on the wheels of the rear truck on the twelfth car from the engine. Both sides introduced witnesses who testified that they had made measurements of the distance from the impression in the embankment down to the rail and over to the edge of the car. Plaintiff and his witnesses made measurements immediately after the killing; that is to say, within two or three days. The measurements made by the defendant's witnesses were made about two months after the killing, but the impression in the embankment was still discoverable. There is a sharp conflict in the testimony as to these measurements, and upon the question as to whether or not it was possible for a man's body, while he was swinging from the side of a car, to come in contact with the embankment. The evidence adduced by the plaintiff was to the effect that there was a space of only eighteen inches between the embankment, at the point where the impression in it was made, and the side of an average box car passing along by it. A number of witnesses testified that the body of a man, swinging from the side of a car, would come in contact with the embankment. The evidence adduced by the defendant tended to show that there was a space of about five feet between the embankment, at the place where

the impression was found, and the side of a passing box car. Many of the witnesses testified that it would be impossible for a man's body to strike the embankment. Some of the witnesses made demonstration by swinging from the side of a passing train. This was tried by three brakemen, one swinging from a flat car, one from an ordinary box car and one from an extra wide furniture car, and they all testified that they did not touch the embankment while passing except that the man on the extra wide furniture car testified that he barely touched the embankment, but not sufficiently to be calculated to drag a man off or to cause him to lose his hold. One of the trainmen testified that the train was going at an ordinary speed between Cabot and Austin, and that there was nothing unusual occurred on the way; that there was no indication of any disturbance in the train, derailment or accident of any kind, and that the train just went along as usual. It may be taken as established by the evidence that Apple struck the embankment, either by falling from the car or by coming in contact with it and being dragged off while he was hanging to the side of the car, and that he went under the train at a distance of thirty or forty feet north of the place where his body came in contact with the embankment. The jury were also justified, if they believed the testimony adduced by the plaintiff, in finding that, if Apple was swinging from the side of the car, his body could have struck the embankment with sufficient force to drag him loose. The remaining question for the determination of the jury was as to whether he fell from the train or whether he was dragged from it by reason of his body coming in contact with the embankment. It is contended that this was purely a matter of conjecture, and that the evidence was not sufficiently certain to warrant a finding that deceased became detached from the car in the manner last stated. The rule has been announced by this court that the jury can not be permitted to indulge in mere conjecture and that something more must appear in order to sustain a finding. *Railway Co.* v. *Henderson,* 57 Ark. 402; *Walker* v. *Louis Werner Sawmill Co.,* 76 Ark. 436. While this salutary rule is not to be ignored, it is equally well settled that any material fact in controversy may be established by circumstantial evidence, and that, though the testimony of witnesses may be undisputed,

the circumstances may be such that different minds may reasonably draw different conclusions therefrom. Such a state of case calls for a submission to the jury of the questions at issue; and where the circumstances are such that different minds may reasonably draw different conclusions therefrom, and the result is not a mere matter of conjecture without facts or circumstances to support the conclusion, then it is the duty of an appellate court not to disturb the finding of the jury. Now, we think the circumstances of this case, as established by the testimony of witnesses, are such as warranted the jury n drawing therefrom an inference of fact as to the manner in which Apple was detached from the car and came to his death. The evidence shows that it was his duty to look after his train, and that it was necessary for him to go down the side of a car to watch for hot boxes or appliances under the train which might fall down or otherwise get out of place. The circumstance that the body appears to have gone under the train thirty or forty feet distant from where it struck the embankment is not without considerable force in determining whether he fell from the car or was dragged loose from it. If he had fallen from the top of a car and struck the embankment at the place indicated, it is probable that he would have rolled under the train at once, and there would have been some evidence of his body being immediately struck by it. On the other hand, if his body struck the side of the embankment with sufficient force to shake his hold loose, he may have clung to the car for a short distance and then fallen under it. This is more probable than that he fell clear of the car and struck the embankment; for, as before stated, if he fell from the car, it is more likely that he would have immediately rolled under it. The hot box was in the trucks of the eighth car, and the rear wheels of the twelfth car were the first that struck him. If he was swinging from the lower side of the eighth car, looking after the hot box, and the rear wheels of the twelfth car first struck him, it supports the theory that he was carried a distance of thirty or forty feet from the time he struck the embankment until he rolled under the car. There is also the circumstance that there was nothing unusual about the train which was calculated to cause Apple to fall from it. He was an able-bodied man, according to the tes-

timony, and with some experience as a trainman, rendering it very improbable that he would have fallen from the train unless he was knocked off in some way. All of the facts and circumstances were before the jury, and we are of the opinion that it presented a case about which different conclusions might be drawn, and that the jury were warranted in drawing the conclusion that he was hanging from the side of a car in the performance of some duty and was dragged off by the embankment.

It is next insisted that Apple should be held, as a matter of law, to have assumed the risk of the danger caused by the proximity of the embankment. This was not one of the ordinary risks of the service, but was one created by a negligent act of the employer. It was not one of the ordinary risks of the service because it was not a part of the usual conditions which existed along the track, but it was an unusual condition, and, as before stated, one that was created by negligence of the employer. *Arkansas Midland Ry. Co.* v. *Worden,* 90 Ark. 407; *St. Louis, I. M. & S. Ry. Co.* v. *Corman,* 92 Ark. 102. It is shown that Apple knew of the presence of the embankment; or at least that it was so obvious that he must be deemed to have taken notice of it, for he had passed that place a number of times while working as brakeman on trains. In order to hold him to an assumption of risk, it must be found, however, that he not only knew of the existing condition, but that he appreciated the danger. It can not be said as a matter of law that, because he saw the embankment there, which he had frequently passed, he appreciated the danger of a miscalculation of the distance between the car and the embankment, so as to be held to an assumption of the risk in proceeding in the discharge of his duty. It presented a question for the jury to determine whether he appreciated the danger; for, unless he did, he is not deemed, as a matter of law, to have assumed the risk. The danger on account of the proximity of the embankment was not so obvious that he is conclusively presumed to have appreciated it.

Nor can it be said, as a matter of law, that he was guilty of contributory negligence, for, if his duty called him down to the side of a car, it did not constitute an act of negligence

for him to place himself in that position. That, also, was a question for the determination of the jury.

The giving of one of the instructions at the request of the plaintiff is assigned as error; but as the instruction is one that has been frequently approved by this court and was applicable to the issues presented in this case, it is unnecessary to give the assignment further discussion.

We are of the opinion that the evidence was sufficient to sustain the verdict, and that the case was properly presented. Judgment affirmed.