MYERS *v.* HOBBS.

4-5007

Opinion delivered April 11, 1938.

*Cockrill, Armistead & Rector,* for appellants.
*Horace Chamberlin,* for appellee.

MEHAFFY, J. This action was begun by W. F. Hobbs and Henry T. Hobbs against J. R. Myers and others in the Pulaski chancery court. The plaintiffs in the court below asked that the will of James B. Keatts be construed as giving the children of Helen Hobbs and Frederick S. Hobbs a contingent remainder only, the fee to said lands vesting in them on the death of Helen Hobbs; that certain deeds mentioned be canceled, and that they be decreed to be the owners of the land described with right to immediate possession.

The tenth clause of the will of James B. Keatts reads as follows: "I will and bequeath and give to James Hobbs, Wm. Hobbs and Daisy Hobbs, children of Frederick S. Hobbs, and my niece, Helen Hobbs, my plantation one mile below Little Rock, known as the Keatts Place, to be equally divided between them, and all other children, my niece Helen Hobbs may have, and my said niece Helen Hobbs is to have the use and benefit, and the profits of said land during her natural life, and at her death to be equally divided between her living children."

William F. Hobbs and Henry T. Hobbs, who were the plaintiffs below in this action, brought a suit in the Pulaski circuit court against W. E. Lenon and others claiming that they were the owners of said land described and asking judgment for the immediate possession and damages. There was an appeal by William F. and Henry T. Hobbs to this court and the opinion, in *Hobbs* v. *Lenon,* is in 191 Ark. 509, 87 S. W. 2d 6. The history of the title is stated in said case, and it is not necessary to repeat the facts here.

Appellants contend first that the chancery court was without jurisdiction. It was alleged in the complaint

that certain conveyances were forgeries, and the prayer was that they be canceled.

One of the well recognized grounds of chancery jurisdiction is the cancellation of instruments. *McCracken* v. *McBee*, 96 Ark. 251, 131 S. W. 450. We think the chancery court had jurisdiction.

It is contended by the appellee that certain instruments, purporting to convey the land in controversy, were not signed by William F. Hobbs and Henry T. Hobbs, but that said instruments were forgeries. The chancery court held that William F. Hobbs had joined in a warranty deed to his mother, dated November 28, 1898, and of record in the recorder's office for Pulaski county, and, together with a quitclaim deed to his mother dated December 9, 1898, had thereby conveyed all his right, title and interest in the property described and that he is estopped to claim same now, and his cause of action was dismissed. Both William F. Hobbs and Henry T. Hobbs testified. The appellee, Henry T. Hobbs, testified that he did not sign any of the conveyances; that he did not know they existed until after his attorney told him about them. He was very positive that the deed to his mother was a forgery and that other conveyances were forgeries. William F. Hobbs, however, testified in another case, and his testimony was introduced in this case. The following occurs in his testimony: "Q. What's become of that other land? A. She sold it and give us 25 acres apiece. Q. You had a settlement, didn't you? A. I sold mine. Q. Didn't you have a settlement along about 1898, when you deeded her this property, over here? A. No, sir; not then. Q. You said your mother gave you a settlement then? A. No, sir, I built a house on mine. I started just as soon as I got the deed. Q. Did she pay you anything for this land that you deeded, across the road, that you are talking about? Did your mother pay you any consideration for it? A. You mean north of the road? Q. Yes. This 275 acres in this deed? A. No, she wanted to sell it and we gave her our interest in it. Court: That was the Frazier place? Witness: That was the Frazier place."

When the witness said "We gave her our interest," he was necessarily talking about the other children who signed, as well as himself. We, therefore, have W. F. Hobbs contradicting Henry T. Hobbs. If the instruments were forged, they could have been forged by nobody but appellee's mother, and we think all the circumstances show that she did not commit a forgery. The instruments were not only signed, but acknowledged before notaries public. Therefore, these men who took the acknowledgment would also be guilty. They were, of course, bound to know whether Henry T. Hobbs and W. F. Hobbs came before them and signed and acknowledged the instruments. Moreover, it appears that all of the instruments were immediately put on the record, so that anybody could know about it immediately. The notaries who took the acknowledgment of the parties were prominent and respected citizens of Little Rock.

Section 3092 of Pope's Digest reads as follows: "If any person shall forge or counterfeit any deed, will, testament, bond, writing obligatory, bill of exchange or promissory note for payment of money or other thing, or any indorsement or assignment of a bond, writing obligatory, bill of exchange or promissory note for the payment of money or other thing, or any acquittance or receipt for money or property or other thing, with intent to defraud another, or shall knowingly utter or publish as true any such instrument as above described, or shall, fraudulently forge, counterfeit or alter any commission, patent, pardon or public record, or an attested copy thereof, or any judicial, executive or legislative officer, or utter as true any of the before described papers, knowing them to be forged, counterfeited or altered, he shall, on conviction, be confined in the penitentiary not less than two nor more than ten years."

It will therefore be seen that if these instruments are forgeries, Mrs. Hobbs and the notaries all committed crimes. It is hardly reasonable that they would do this and put the evidence of it on the public records immediately. The deed alleged to have been made by William F. and Henry T. Hobbs was made in 1898. This

was a warranty deed, and on December 9, 1898, the heirs made a quitclaim deed, stating that it was made to correct error in description of land in the warranty deed already made, and the deed from Helen Hobbs to John R. Frazier was made April 2, 1903, and filed for record April 6, 1903. This was about five years after the date of the deed alleged to have been made by the heirs to Helen Hobbs. Frazier immediately took possession of the place, and he and those claiming under him, have occupied it continuously since 1903.

All of the parties that could have testified as to the genuineness of the deed and mortgages are dead. The original instruments were not introduced, so that handwritings might be compared or testimony as to handwritings introduced. No one testified that the deed and mortgages were forgeries, except the parties to the suit.

"The testimony of a party to an action who is interested in the result will not be regarded as undisputed in determining the legal sufficiency of the evidence." *Bridges v. Shapleigh Hdw. Co.*, 186 Ark. 993, 57 S. W. 2d 405; *Davis v. Oaks*, 187 Ark. 501, 60 S. W. 2d 922.

The parties who testified as to the forgeries were not contradicted by any witness. In the nature of things they could not be, but all the circumstances tend to show that the instruments were genuine.

"The settled rule, which has been many times approved by this court, is that a well connected train of circumstances is as cogent of the existence of a fact as an array of direct evidence, and frequently outweighs opposing direct testimony, and that any issue of fact in controversy can be established by circumstantial evidence when the circumstances adduced are such that reasonable minds might draw different conclusions." *Hanna v. Magee*, 189 Ark. 330, 72 S. W. 2d 237; *Pekin Wood Products Co. v. Mason*, 185 Ark. 166, 46 S. W. 2d 798; 23 C. J. 48.

We think it wholly immaterial whether appellant and William F. Hobbs took, under the will of James B. Keatts, a contingent remainder or a vested remainder, and we do not decide that question.

We said in a recent case: "We have already said that the reason for declaring the contingent remainder void or ineffectual, is because of the fact that the remainderman, under the circumstances, in the case of *Deener* v. *Watkins,* [191 Ark. 776, 87 S. W. 2d 994], *supra,* did not have title to the property at the time of his conveyance, and in that case predeceased the life tenant, and, therefore, never had title. . . . —but if he conveyed by solemn deed and covenants of warranty as in the case before us, there is no question, but that an after-acquired title to property conveyed, would inure to the benefit of his grantee."

So if these instruments were not forgeries, the after-acquired title would inure to the benefit of the grantees; but, as we have already said, we think this is immaterial because we think all the circumstances show such conduct on the part of the appellee and W. F. Hobbs as disentitles them to recover, or, as held by the chancellor as to W. F. Hobbs, they are estopped.

It follows from what we have said that the case on cross-appeal by W. F. Hobbs must be affirmed, and the case on appeal reversed and dismissed.

It is so ordered.