GOOKIN *v.* LOCKE

5-3854                                         405 S. W. 2d 256

Opinion delivered May 30, 1966

*Guy Brinkley* and *Wright, Lindsey & Jennings,* for appellant.

*Gordon & Gordon,* for appellee.

J. L. (BEX) SHAVER, Special Justice. This is an action for the recovery of damages resulting from a traffic mishap that occurred between a car being driven by appellee, Locke, and one driven by appellant, Gookin.

The appellee alleged in his complaint that the damages were caused by the negligence of the appellant in that (a) he was traveling at a high rate of speed, (b) he failed to keep a proper lookout, (c) he failed to yield right of way to an emergency vehicle, (d) he failed to turn off of the highway onto the shoulder of the road when he saw emergency car approaching and giving signals, and (e) he failed to use care and caution of an

ordinary prudent person under the same or similar circumstances.

The appellant denied the allegations of the complaint and filed a counter-claim, alleging that the collision was caused by the negligence of appellee in that (a) he failed to maintain a proper lookout, (b) he failed to have his vehicle under proper control, (c) he was traveling at an excessive rate of speed under the circumstances, (d) he failed to yield right of way, (e) he was driving on wrong side of road, and (f) he attempted to pass traffic on a curve when his view of approaching traffic was obstructed.

The appellant made timely motions for a directed verdict which were overruled by the Court. The cause was submitted to the jury upon instructions that set forth the issues of negligence as contended for by both parties, including an instruction on comparative negligence.

The jury returned a verdict in favor of appellee, Locke, in the sum of $14,000.00. From judgment on the verdict the appellant brings this appeal.

The appellant states the lower Court erred in not directing a verdict in his favor because there is no substantial evidence in the record showing that he was negligent. This is the only question to be decided on this appeal.

The rule is well settled in this state that if there is any substantial evidence of negligence on the part of the defendant when viewed in the light most favorable to the plaintiff and given its highest probative value, the question must be submitted to the jury. *Glidewell* v. *Arkhola Sand & Gravel Co.,* 212 Ark. 838, 208 S. W. 2d 4; *Superior Forwarding Co.* v. *Garner,* 236 Ark. 340, 366 S. W. 2d 290. With this rule in mind we will examine the evidence in this case.

On the morning of January 25, 1965, State Trooper Harry Locke, appellee, who was stationed at Morrilton, Arkansas, was notified by the Russellville Police Department that two boys had burglarized a business in Morrilton, and the Russellville Police had engaged in a gun fight with them and requrested appellee to come to Russellville to help them. Appellee proceeded west toward Russellville on U. S. Highway 64, driving a 1963 Special Blue Ford State Police car, marked with two stars on the door, and equipped with a siren and a red light on top of the car. As appellee was leaving Atkins, traveling west on U. S. Highway 64, a small car identified as a Ford Falcon, with a Texas license, turned into U. S. Highway 64 at an unreasonable rate of speed, and headed west. Appellee, believing the said car needed checking, went in pursuit of it.

Highway 64 west of Atkins is a two lane pavement running east and west through slightly rolling, open country-side. From the western city limits of Atkins for a distance of a mile to the west, the highway is straight and, for all practical purposes, level. When one reaches the Nottenkamper home, which is located about one (1) mile west of Atkins, the highway for westbound traffic curves slightly to the right and then takes a slight curve to the left.

Conversely, an eastbound car approaching this location would encounter a slight curve to the right and then a slight curve back to the left before entering on the straight portion of the highway leading directly to Atkins. There is a slight depression between the two curves. The record contains photographs of the highway and engineer's drawing which reflect the terrain, highway, etc. Sight distances looking both east and west from a reasonable distance from collision were testified to by several witnesses to show that each party could have seen the approaching car of the other if a proper lookout had been kept.

The said Falcon car traveling west at a high rate

of speed passed a trailer truck that was going west on said highway. Appellee, continuing his pursuit of the Falcon car, undertook to pass said trailer truck, and before passing same turned on his red light and blew his siren to warn the truck driver of his approach. There is a dispute as to whether the siren continued to sound up to the time of the collision so as to give the Locke vehicle the status of an emergency vehicle under Ark. Stat. Ann. § 75-725 (Repl. 1957); and we assume the negative for the purpose of this Opinion. The truck slowed down and pulled over to the right of the road. As appellee overtook the trailer truck and was in the act of passing same, he met the car proceeding in the opposite direction being driven by the appellant, Gookin. Appellee pulled his car over close to the truck and applied his brakes. Appellant also applied his brakes, and both cars collided. Both appellant and appellee were seriously injured.

The point of impact of the cars was 41 feet east of the Nottenkamper home, and was approximately two feet south of the center line of the highway in the eastbound traffic lane. The skid marks from appellant's car extended west from the point of impact for a distance of 109 feet parallel to the center line in the eastbound lane. A few feet west of the point of impact, the skid marks from appellant's car began to veer slightly to the north toward the center line of the highway but did not cross the center line. The skid marks from the appellee's, car measured 194 feet from point of impact; 133 feet of these skid marks were entirely in eastbound traffic lane and 61 feet were angling across the center line. The pavement at point of impact was 24 feet wide. The shoulders on the south side of the road were nine feet, and seven feet wide on the north side, and both shoulders were graveled and in good condition. The road had good shoulders all the way. Appellee's car was about two feet over the center line, or in the eastbound traffic lane at time of collision, and the left front of each car collided.

Appellee testified: that when he pulled into the

eastbound traffic lane he could see the highway in front of him; that he did not know exactly how fast he was going when he pulled out to pass the trailer truck; that he was not driving 70 or 75 because he did not believe the car would accelerate that fast; and that he probably was going 70 miles an hour. He further testified that when he first saw appellant he had his red light on and the other car was 250 or 300 yards away. Appellant testified that he had been traveling between 50 and 55 miles an hour, and that anywhere from 50 to 60 miles an hour was his speed.

Ernest Peters, the driver of the trailer truck which appellee was passing, testified that a speeding red car with Texas license passed him outside the west city limits of Atkins. He testified: that he glanced in his mirror and saw a highway patrolman coming with his lights flashing; that there were two cars approaching, going east; that the first car pulled over on the shoulder but the second car did not pull over any, and they hit; and that the trooper's car was real close to his side of the road, "as I was off the road as far as I could get." Peters testified that the siren on the patrol car was on after the collision and he turned off the switch; and that it was making a "low whistle."

Hollis T. Biffle, who was riding with Ernest Peters in the trailer truck, heard Peters say, "here come a Patrolman after someone." Biffle testified: that he looked up and saw the Gookin car approaching; that he (Gookin) did not look like he had seen anything and was "thinking about nothing at all"; that about that time he (Gookin) applied his brakes and when he got even with the trailer truck the car made a swerve to the left and "you could hear tires crying."

Appellant contends that appellee was not operating an authorized emergency vehicle at the time of the collision and therefore appellee was not entitled to the benefits of Ark. Stat. Ann. §§ 75-625 and 75-725 (Repl. 1957), which imposed the obligation upon appellant to

yield the right of way and stop his car and remain in such position until the authorized emergency vehicle had passed. Regardless of this, the case was submitted to the jury on the issue of comparative negligence. The instruction, not here complained of, reads as follows:

"If you should find that the occurrence was proximately caused by negligence of both Harry Locke and John Gookin, then you must compare the percentages of their negligence. "If the negligence of Harry Locke was of less degree than the negligence of John Gookin, then you should find for Harry Locke on his complaint and also for him on the counterclaim of John Gookin. However, you must reduce the damages of Harry Locke in proportion to the degree of his own negligence.

"If the negligence of John Gookin was of less degree than the negligence of Harry Locke, then you should find for John Gookin on his counterclaim and also for him on the complaint of Harry Locke. However, you must reduce the damages of John Gookin in proportion to the degree of his own negligence.

"If you should find that Harry Locke and John Gookin were equally negligent or that neither was negligent, then neither can recover from the other, and you should find against Harry Locke on his complaint and against John Gookin on his counterclaim."

There is an annotation in 47 A.L.R. 2d, page 61, entitled "Collision—Approaching Car—Wrong Lane." On page 10 of said annotation we find the statement that where a driver is put on notice that the other driver cannot or will not turn back, the driver who was initially complying with the law may be held liable for his failure to avoid the collision, notwithstanding the improper position of the other car. The annotator further states:

"The statement of these principles is easier than their application, however, since most of the cases are characterized by directly conflicting evidence as to the actual circumstances of the accident, and even where the story of one party or the other is accepted, the courts in most of the cases have concluded that the question of liability involves an issue of fact for the jury."

See also *Priestly* v. *Furst,* 192 Ark. 374, 91 S. W. 2d 599.

We are required to view this record in the light most favorable to appellee and to give it every reasonable inference in support of the verdict. As aforesaid, the case was submitted to the jury with an instruction on comparative negligence; and there was evidence to sustain the verdict on that issue.

Affirmed.

AMSLER, J., not participating.