JAMES H. WOODWARD v. MARY J. BLYTHE, ADM'X.,
ESTATE OF KERMIT A. BLYTHE, DECEASED

5-4750            439 S.W. 2d 919

Opinion Delivered April 28, 1969

[Rehearing denied May 26, 1969.]

*Wright, Lindsey & Jennings* for appellant.

*Guy H. Jones* and *Phil Stratton* for appellee.

FRANK HOLT, Justice. This case results from a multiple car collision. Upon a jury trial, the issues of negligence and damages were found against the appellant and a codefendant, Leonard Johnson, who does not appeal. The jury awarded $137,000.00 to appellee. For reversal the appellant first contends that there was no substantial evidence to support a finding that appellant was guilty of negligence which was a proximate cause of any accident or collision involving his vehicle.

It is a well settled rule that if there is any substantial evidence of negligence by a defendant, when viewed in the light most favorable to a plaintiff and given its highest probative value, the question must be submitted to the jury. *Gookin* v. *Locke*, 240 Ark. 1005, 405 S.W. 2d 256 (1966).

This accident occurred about 6:15 a.m. on February 14, 1966, on Highway 70 about five miles west of Brinkley, Arkansas. The highway was 24 feet 5 inches wide, with each shoulder being 9 feet 5 inches in width. It was dark, the road was straight and level, and weather conditions presented no hazards. Appellee's decedent, Kermit Blythe, was driving a red Corvair in an easterly direction. Following him was the appellant who was driving a light blue Dodge. The decedent suddenly veered to his left to avoid striking a stalled and unlighted Cadillac which was headed in the same direction, positioned on the right shoulder of the highway and partially on the pavement. This car was being operated by the codefendant, Johnson. When the decedent pulled to his left to pass the stalled vehicle, he crossed the center line about 18 inches whereupon the left front portion of his car collided with an oncoming Pontiac automobile. This collision caused the Blythe Corvair's direction to be reversed and its left front portion to be positioned in the path of appellant's eastbound automobile. Appellant's vehicle skidded 83½ feet before striking the left

front portion of decedent's vehicle. Following this impact the appellant's car deflected slightly to the right and after traveling about 25 to 30 feet, came to rest at the rear of the stalled Cadillac after striking it and doing slight damage. The decedent's car, after being struck by appellant's vehicle, traveled eastward, or in its original direction and traffic lane, on past the stalled Cadillac and came to rest on the right side of the road approximately 50 feet from the point of impact with appellant's car. The collision between the Corvair and the Pontiac, and then the Dodge and Corvair, occurred within an area of approximately 20 feet. The appellant said he first applied his brakes when he saw flames resulting from the Pontiac-Corvair collision when he was 125 to 150 feet distant. He testified that he was traveling about 60 miles per hour. This would be approximately 88 feet per second. He had been following the Corvair at a distance of 250 to 275 feet for about four or five miles. There was a burned mark or trail on the pavement extending eastward from the 20-foot area, or the point of impact between the Dodge and Corvair, to about 8 or 10 feet from where the Corvair came to rest. There were fresh scratch marks on the pavement about the center of the eastbound traffic lane and near the end of appellant's skid marks. According to appellant, he never saw the stalled vehicle nor the oncoming Pontiac before the first collision. He does not remember whether his vehicle was damaged by the collision with decedent's vehicle or the stalled Johnson vehicle and recalls only one impact. There was red paint from the decedent's Corvair on the left front of appellant's car which shows extensive damage.

We have held many times "that a well connected train of circumstances is as cogent of the existence of a fact as an array of direct evidence, and frequently outweighs opposing direct testimony, and that any issue of fact in controversy can be established by circumstantial evidence when the circumstances adduced are such that reasonable minds might draw different conclusions."

*Myers* v. *Hobbs,* 195 Ark. 1026, 15 S.W. 2d 880 (1938);
*Ford Motor Co.* v. *Fish,* 233 Ark. 635, 346 S.W. 2d 469
(1961). See, also, *MFA Ins. Co.* v. *Pearrow,* 245 Ark.
795, 434 S.W. 2d 269 (1968); *St. Louis, I.M.&S. Ry.
Co.* v. *Owens,* 103 Ark. 61, 145 S.W. 879 (1912). Further,
in determining the legal sufficiency of evidence, the tes-
timony of a party to an action who is interested in the
result will not be regarded as undisputed. *Bridges* v.
*Shapleigh Hardware Co.,* 186 Ark. 993, 57 S.W. 2d 405
(1933). When we view the evidence in this case accord-
ing to these well established rules and in the light most
favorable to the appellee, as we must do, we cannot say
as a matter of law that the evidence is insubstantial that
the appellant was following too closely or failed to keep
a proper lookout, or failed to keep his vehicle under con-
trol. Thus, we find no merit in appellant's first con-
tention.

Appellant next asserts there was no substantial evi-
dence to support a finding that appellee's decedent was
alive following the collision between his Corvair and the
Pontiac and, therefore, there was no substantial evidence
that any negligence on the part of appellant caused or
contributed to the cause of death of appellee's decedent.
We must agree with appellant on this contention. The
appellee's decedent was found dead in his Corvair with-
in a few minutes following the second collision. The
first collision occurred when appellee's decedent collided
with the oncoming Pontiac. From the physical evi-
dence, the entire left side of the Pontiac was damaged
with a shearing or ripping effect. The left rear door
was torn from the car and one of the seven passengers
in this vehicle was killed. After this impact the Pont-
iac continued westward in its proper lane, veering to the
right, for 18 feet and then along the shoulder for another
36 feet where it stopped on the edge of the shoulder em-
bankment. The force of this impact, however, reversed
the direction of the Corvair and positioned it in the path
of the oncoming vehicle driven by appellant. According
to appellant, he was following the Corvair at 60 miles

per hour, or 88 feet per second, when he observed flames from the first collision. He applied his brakes and skidded 83½ feet before colliding with the left front portion of the red Corvair. After this collision, as previously stated, appellant's vehicle veered to the right and traveled approximately 25 to 30 feet before striking the rear of the stalled Johnson Cadillac, doing slight damage to it. The Corvair, following the second collision, continued in its original or eastward direction and came to rest approximately 50 feet from the Dodge-Corvair point of impact and about 30 feet in front of the stalled Cadillac. The left front portion and door of the Corvair were crushed inward. The driver's seat was pushed to the right and partially torn loose. The steering shaft and wheel were pushed upward and to the right. The body of appellee's decedent was found strapped in his seat and lying to the right. He had head injuries, a crushed chest, broken legs and other bodily injuries. The death certificate shows that death was caused by "Brain injury and Internal injuries" as a result of "Head on collision of automobiles." This is the extent of the medical evidence. There was no damage to the rear or right front or right side of decedent's vehicle. According to the physical evidence, there was red paint on the bumper and left front portion of appellant's vehicle. The damage was limited to this area of appellant's car. Appellant suffered head injuries.

Even though we find substantial evidence of negligence on the part of appellant, there was still the burden of proof upon the appellee to establish that such negligence was a proximate or contributing cause of the death of appellee's decedent. *Superior Forwarding Co.* v. *Garner*, 236 Ark. 340, 366 S.W. 2d 290 (1963); *Kapp* v. *Sullivan Chev. Co.*, 234 Ark. 415, 353 S.W. 2d 5 (1962).

In *Kapp* we said:

"To submit to a jury a choice of possibilities is but to permit the jury to conjecture or guess, and

> where the evidence presents no more than such choice it is not substantial, and where proven facts give equal support to each of two inconsistent inferences, neither of them can be said to be established by substantial evidence and judgment must go against the party upon whom rests the burden of sustaining one of the inferences as against the other.''

See *Superior Forwarding Co.* v. *Garner, supra; Glidewell* v. *Arkhola Sand & Gravel Co.*, 212 Ark. 838, 208 S.W. 2d 4 (1948) ; 22 Am. Jur. 2d, Death §§ 222 and 243.

In the recent case of *Ellsworth Bros. Truck Lines, Inc.* v. *Canady*, 245. 1055, 437 S.W. 2d 243 (1969), we said:

> ''It is not sufficient to show that the injuries suffered might have been caused when appellant's vehicle hit the rear of the Heaggan automobile. This causal connection between a plaintiff's damages and the defendant's negligence must be established by direct or circumstantial evidence, and it cannot be proved by conjecture or speculation. (citing cases)''

See, also, Prosser on Torts, (3d Ed. p. 245).

In the case at bar there is no contention that appellant in any manner contributed to the first collision. From the evidence in this case, we are forced to the view that only by conjecture and speculation could it be said that appellee's decedent was or was not alive when this second impact occurred and that negligence on the part of appellant was a proximate or contributing cause of the death. Therefore, we must reverse this judgment.

However, we do not think that reversal of this judgment requires its dismissal. In *St. Louis Southwestern Railway Co.* v. *Clemons*, 242 Ark. 707, 415 S.W. 2d 332 (1967), it was aptly said:

"We come now to the question of whether this case should be dismissed or remanded. This court has long adhered to the rule so well reiterated in *Fidelity Mutual Life Insurance Co.* v. *Beck,* 84 Ark. 57, 104 S.W. 533 and 1102 (1907). The general rule is to remand common law cases for new trial. Only exceptional reasons justify a dismissal. One of the exceptions is an affirmative showing that there can be no recovery. *Pennington* v. *Underwood,* 56 Ark. 53, 19 S.W. 108 (1892). There it was said that when a trial record discloses 'a simple failure of proof, justice would demand that we remand the cause and allow plaintiff an opportunity to supply the defect.' To the same effect, see *Hinton* v. *Bryant,* 232 Ark. 688, 339 S.W. 2d 621 (1961)."

In the case at bar there is a deficiency of proof as to whether appellant's negligence was a proximate cause of decedent's death. It is not impossible that such a deficiency of proof could be supplied upon a retrial.

The appellant next contends, in the alternative, that the trial court erred in modifying, amending, and changing the verdict as returned by the jury. We agree that this also constituted reversible error. However, we do not deem it necessary to discuss this point since this error is not likely to occur again upon a retrial.

Reversed and remanded.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN. I concur in the disposition of this case. I would remand for new trial upon the basis that the lack of substantial evidence is due to the failure of the appellee to show causation where expert testimony might have supplied the deficiency in accordance with the views stated in my concurring opinion in *Continental Geophysical Co.* v. *Adair,* 243 Ark. 589, 594, 420 S.W. 2d 836. See *Reynolds Metal Co.* v. *Ball,* 217 Ark. 579, 232 S.W. 2d 441.