UNITED STATES BORAX AND CHEMICAL COMPANY *v.* BLACKHAWK WAREHOUSING AND LEASING COMPANY

CA 79-84                                      586 S.W. 2d 248

Opinion delivered August 29, 1979
and released for publication September 19, 1979

---

[1]Appellee contends, accurately, that the wording of the provisions in the Employer's Mutual policy is different from the wording of the parallel provision in its policy, but the essence of the two provisions is the same.

*Rieves, Rieves & Shelton,* by: *Connie Lewis Wayton,* for appellant.

*David Solomon,* for appellee.

JAMES H. PILKINTON, Judge. This case was appealed to the Arkansas Supreme Court and by that court assigned to the Arkansas Court of Appeals. Rule 29(3) Ark. Supreme Court.

On Sunday, January 16, 1977, the defendant, Blackhawk Warehousing & Leasing Company, was storing goods and merchandise consisting of agricultural chemicals owned by the plaintiff, U.S. Borax, in accordance with the warehousing contract between the two parties. At sometime between 4:30 p.m. January 16, 1977 and 7:00 a.m. January 17, 1977, goods and merchandise belonging to the plaintiff consisting of eight pallet loads of Cobex (288 five gallon cans), were stolen from the defendant's premises. The warehouse is a large metal building.

The burglars entered the building by ripping open one of the side panels. Then chemicals which had been stored next to the wall were pulled outside to allow entry into the

building. After entry a padlock and chain were cut to allow a door to be opened. A forklift truck was "hot wired" since it was locked. Then it was used by burglars to move a sailboat blocking the path to appellant's stored chemicals. Other chemicals in the way were shoved aside, and the cans of appellant's stored chemicals were taken from the premises. The loss sustained by the plaintiff amounted to $23,658.28 and suit was brought for that amount.

At the trial the defendant was granted a directed verdict at the close of the plaintiff's case. This appeal followed claiming as one point that the court erred in directing a verdict.

The Uniform Commercial Code sets out the duty of care required of a warehouseman.

Duty of care — Contractual limitations of warehouseman's liability. —

(1) A warehouseman is liable for damages for loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care. Ark. Stat. Ann. 85-7-204.

A warehouseman is required to exercise due care or a reasonable degree of prudence for the protection and preservation of goods stored with him and is liable for a loss or injury for a failure to exercise such care.

It is well settled law in Arkansas that a motion for directed verdict should be denied unless the testimony, when viewed in the light most favorable to the plaintiff, presents no issue for the jury with respect to the defendant's liability. The issues in a negligence case where the standard of care is that of a reasonably careful person are peculiarly appropriate for determination by the jury. *Bergetz* v. *Repka,* 244 Ark. 60, 424 S.W. 2d 367 (1968).

The court in *St. Louis & San Francisco Railroad Co.* v. *Rie,*

110 Ark. 495, 163 S.W. 149 (1913) stated:

> It is true, there is no dispute about the material facts in the case, but in such cases it is only where all reasonable minds must draw the same conclusion from the evidence that the question is one of law for the Court. The rule is that where there is room for an honest difference of opinion among intelligent men as to whether the conduct of the defendant was that of an ordinarily prudent person, in view of all the facts and circumstances surrounding him, the question of negligence is one for the jury, although the facts are undisputed.

*Doniphan Lumber Co.* v. *Henderson,* 100 Ark. 53, 139 S.W. 649 (1911) also says that where there is an uncertainty as to the existence of negligence in the case it is a question of fact and must be settled by the jury whether the uncertainty arises as a conflict in the testimony or because the facts in the case are undisputed and fair minded men might draw different conclusions from them.

The Arkansas Supreme Court has consistently held that questions of negligence are for the jury and that the court should not direct a verdict for the defendant where there is any question of negligence on the defendant's part.

> The evidence must be viewed in the most favorable light for appellant, and when given its strongest probative force in her favor, we are of the opinion that reasonable minds might reach different conclusions on the question as to whether or not the injury to appellant was caused by the negligence of the appellee, as alleged in her complaint. It was therefore a question of fact for the jury to determine. *Robinson* v. *Little Rock Railway & Electric Co.,* 113 Ark. 227, 168 S.W. 1125 (1914).

See also *Ragland* v. *Snotzmeier,* 186 Ark. 778, 55 S.W. 2d 923 (1933); *Palmer* v. *Dillard,* 224 Ark. 155, 272 S.W. 2d 66 (1954); *Missouri Pacific Railroad Co.* v. *Harelson,* 238 Ark. 452, 382 S.W. 2d 900 (1964); *St. Louis Iron Mountain & Southern Railway Co.* v. *Hitt,* 76 Ark. 224, 88 S.W. 911 (1905); *Woodward* v. *Blythe,* 246 Ark. 791, 439 S.W. 2d 919 (1969);

*Gookin* v. *Locke,* 240 Ark. 1005, 405 S.W. 2d 256 (1966).

Plaintiff alleged the loss sustained was the proximate result of defendant's negligence in storing and keeping goods and merchandise without the proper security measures appropriate to the situation. Specifically it was alleged that defendant was negligent in not providing proper security measures in the following particulars:

(a) In failing to provide watchmen inside the facility;

(b) In failing to have any burglar alarms or similar systems installed in the warehouse;

(c) In failing to provide roving patrols outside of the building;

(d) In failing to place palletized storage directly against the inside wall at the point of access as was done against other walls to prohibit any attempt to enter from the outside;

(e) In failing to provide other adequate security measures which would have prevented the break-in and subsequent loss to the plaintiff;

(f) In failing to be put on notice that extra security measures were needed after a previous break-in occurred at the warehouse approximately 7 months before the loss was sustained by the plaintiff.

It was also alleged that since the break-in, Blackhawk has realized the security was inadequate and has taken measures to make the facility more secure by hiring guards to patrol both inside and outside the building.

Negligence has been defined as:

The failure to do something which a person of ordinary prudence would do under the circumstances, or the doing of something that a person of ordinary prudence would not do under the circumstances. *Self* v. *Kirkpatrick,*

194 Ark. 1014, 110 S.W. 2d 13 (1937).

The court in that case went on to say that if there is any substantial evidence tending to show negligence the question is for the jury.

A review of the evidence shows the following facts were established. It was admitted that two hundred eighty-eight (288) loose 5 gallon cans of Cobex manufactured by plaintiff stored in defendant's warehouse near Helena, Arkansas, were stolen by a person or persons unknown. Entry was gained by removing or bending back the steel sheet on the east side of the building near where the fire extinguisher was located. Several 50 pound bags of a different chemical were pulled outside in order for someone to get through to the inside of the building. A padlock and chain on the east end overhead door of the warehouse were cut to allow the door to be opened and the material to be removed. A sailboat which was parked in the aisle in front of the door was pulled aside by the use of defendant's forklift truck which was inside the warehouse. The wiring of the forklift truck was tampered with in order to use this machine. It was locked and the key had been removed and placed in the office. Several pallets of empty packaging material surrounding the Cobex were knocked over blocking the aisle and causing the forklift to be blocked in. It appeared that the Cobex was loaded onto a truck by hand since all of the pallets and pallet caps were left inside of the building.

The nine following things were proven by the appellant. Palletized storage was not placed directly against the inside wall at the point at which the intruder gained access at the time of the theft. A similar break-in occurred at the facility approximately 7 months before the loss suffered by the plaintiff and after that break-in no burglar alarms, roving patrols, watchdogs or watchmen were added as security measures. Burglar alarms have been installed and a security service has been hired to make nightly rounds and check the outside of the building since the occurrence of the theft and loss suffered by the plaintiff. There are customary security standards in this area for agricultural chemicals and those security standards vary with the different type of goods warehoused. The

value of the products and the ability to sell the products quickly must be taken into consideration in arriving at these standards. The theft risk classification given to Cobex in this area is very high. It took approximately 80 minutes to 2 hours (man hours) to load the 288 cans of Cobex onto a truck parked a minimum distance of 20 feet from the stacked Cobex. At the time of the theft, U.S. Borax had 26,184 five gallon cans of Cobex stored at Blackhawk Warehousing & Leasing Company and the total value of the Cobex stored at that time was $2,500,000.00. It was stipulated the value of the Cobex taken in theft was $23,658.28.

Some storage was placed against the walls to prevent the building sheets from being removed and the material taken. In so doing, palletized storage was placed against all walls but only to a point approximately 2 feet wide under a fire extinguisher. Fifty pound bags of granular material were placed several high against the wall. Appellee says that the arrangement was designed so that it would not block access to the fire extinguishers. An attempt was made to remove sheets several feet down the wall from the actual point of entry, but palletized material blocked entry at that point.

After the break-in and loss in question additional measures were added. An ADMECO Burglar Alarm system was installed, and security service hired to make nightly rounds to check outside the buildings.

The evidence introduced to establish the alleged negligence of Blackhawk Warehousing is substantial and sufficient to make a case for the jury. This is especially true when the evidence is considered in the light most favorable to the plaintiff.

The court seems to base the directed verdict on the fact that Donald Serens, who was called as an expert on customs in the warehousing industry by the plaintiff, testified that each individual warehouseman must make the decision as to what security methods to use.

It is well settled law in Arkansas that the value and weight of expert testimony is for the jury to determine. Even

where there is no conflicting testimony to contradict the expert's opinion the jury must decide the ultimate issue.

> . . . Were it conceded that all the expert testimony offered by both parties was in full accord and agreement and not contradicted by any other expert evidence, yet the jury would not be bound by such testimony . . . 'Even if several competent experts concur in their opinion, and no opposing expert evidence is offered, the jury are still bound to decide the issue upon their own fair judgment.' *Arkansas Power & Light Co.* v. *Pollen,* 199 Ark. 566, 134 S.W. 2d 585 (1939).

> . . . 'but the jury are the judges of the weight to be attached to their opinion . . . It is for the jury to determine what value his opinion is entitled to under the circumstances, and to give it such weight as they think it deserves.'

It is evident from the previous decisions of this Court that it is the exclusive province of the jury to determine the value and weight to be given the testimony of expert witnesses, and the jury is authorized to believe or disbelieve the whole or any part of such expert witnesses' testimony. *Home Indemnity Co. of New York* v. *Jelks,* 187 Ark. 370, 59 S.W. 2d 1028 (1933).

> Expert witnesses are not called upon to decide disputed questions of fact but only to give opinions upon matters upon which their opinions are sought that the jury may determine the question. *St. Louis Iron Mountain & Southern Railway Company* v. *Williams,* 108 Ark. 387, 158 S.W. 494 (1913).

The expert said that there were customary security standards in this area for agricultural chemicals and those standards varied with the different types of warehoused goods and the consideration used in determining what standards should be used were the value of the products and the ability to resell the products. The expert witness also testified Cobex had a high theft risk and that fact should be taken into consideration in determining what safety measures were to be

used by the warehouseman.

*Jonesboro Compress Company* v. *Hall,* 178 Ark. 753, 13 S.W. 2d 298 (1929) is an Arkansas case similar to the one at bar. In that case, complaints were filed by 56 plaintiffs against the Jonesboro Compress Company to recover the value of certain cotton stored by the plaintiffs in the warehouse of the defendant. The cotton was destroyed by fire and the court held the only ground of alleged negligence upon which there was enough testimony to go to the jury was that of the failure by the compress company to keep a watchman on the premises during the noon hour. In the case at bar, not only was there an allegation made that there was no watchman, or other security measures such as alarms, roving guards, or dogs employed at the time of the theft, but such matters were admitted by the defendant in its answers to the interrogatories read into evidence. The case is similar to the one at bar as in the *Jonesboro Compress* case there was expert testimony offered as to the custom in the industry to employ watchmen at times when the compress was not in operation. The undisputed testimony was that it was not customary to employ watchmen when the compress was not being operated. There was no evidence other than that offered by the defendant that it was not customary to keep watchmen at compresses during the time they were not being operated. In discussing this undisputed testimony, the court said:

> Such testimony is admitted not for the purpose of permitting persons engaged in the kind of business out of which the damage arose to artificially, and without the supervision of the Courts, determine what does or does not constitute negligence, but is admitted as bearing upon the degree of care which an ordinarily prudent person would use under the circumstances of this particular case.

The court went on to hold that this was a jury question.

After careful consideration of the testimony, *we are unwilling to say, as a matter of law, that the failure of the defendant to keep a watchman at the compress during the noon hour was not negligence,* although this was not the custom of other

compresses. The jury may have concluded that the fire hazard required the presence of a watchman at the Jonesboro compress. (Emphasis added).

The court also said the testimony showed cotton was one of the most inflammable substances and the care employed should have been commensurate to the attending danger. The court stated that a watchman employed for the purpose would have known the portions of the compress which were open and exposed to danger and might have discovered the presence of the fire and reported or given a fire alarm sooner than was done. This is somewhat analogous to the situation at hand. Here the testimony showed that Cobex is a high theft risk item and the jury might have found, regardless of the custom in the industry, had a watchman been present or roving patrols been on duty or watchdogs or burglar alarms employed at the time of the theft, the watchman could have apprehended the thieves, stopped the burglary, or an alarm could have notified law enforcement officials who could have reacted promptly, therefore completely thwarting the efforts of the thieves.

We hold that the trial court should have let the matter go to the jury for a jury determination as to whether appellee acted negligently in not providing certain safety measures in light of all of the circumstances shown by the evidence.

Since the case must be reversed for a new trial, little need be said about appellant's other point. It claims that the court erred in not allowing the expert witness to answer a question which went to the ultimate issue of the case. Since this same problem could arise on retrial, we call attention to The Uniform Rules of Evidence, Rule 704 (Ark. Stat. Ann. 28-1001), which states:

Opinion on ultimate issue — Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

*Hawkins* v. *Missouri Pacific Railroad Company*, 188 F. 2d 348 (8th Cir. 1951) states:

To permit an expert to state an opinion in a technical field, which the Trial Court feels may be of assistance to the jury, is not an invasion of province of jury, merely because the opinion has relation to some ultimate fact on which the verdict of the jury may depend. *Cropper* v. *Titanium Pigment Co.*, 8 Cir. 47 F. 2d 1038, 1043, 78 A.L.R. 737.

Experts in Arkansas have been allowed to testify as to the standard of care in other type cases. In *McClellan* v. *French*, 246 Ark. 728, 439 S.W. 2d 813 (1969), the Court held an expert could testify as to the standard medical procedures in the community even though this was the ultimate issue to be decided by the jury.

Reversed.